United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 20, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-10135

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY S. LEE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before GARWOOD, JONES and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this criminal appeal, Timothy S. Lee challenges his sentence imposed upon remand, arguing that the mandate issued by this court in United States v. Lee, 310 F.3d 787 (5th Cir. 2003) ("Lee I") precluded the district court from upwardly departing at resentencing pursuant to § 4A1.3 of the United States Sentencing Guidelines Manual.  Lee asserts in the alternative that the district court's upward departure was premised on an erroneous determination that Lee's criminal history category

1

did not adequately reflect the seriousness of his criminal history or the likelihood that he would reoffend. Because we find, on the facts presented, that the district court's imposition of a discretionary upward departure was not foreclosed by our mandate and was warranted, we affirm the district court's judgment sentencing Lee to a term of imprisonment of 65 months, three years of supervised release, and a $100 special assessment.

FACTUAL AND PROCEDURAL HISTORY

On January 17, 2001, Timothy S. Lee was charged by indictment with two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922 (g) (1) and § 924 (a) (2). On April 27, 2001, Lee pleaded guilty before the district court to Count 2 of the indictment pursuant to a conditional plea agreement in exchange for the dismissal of Count 1 and the reservation of Lee's right to appeal the district court's denial of his motion challenging the constitutionality of § 922 (g) (1) (proscribing the possession of a firearm by a convicted felon).

The Presentence Report ("PSR" or "report") calculated Lee's base offense level under U.S.S.G. § 2K2.1 (2000).[1] The report concluded that Lee's prior conviction for Unauthorized Use of a Motor Vehicle ("UUMV") was a crime of violence. Accordingly, the PSR adjusted Lee's offense level under U.S.S.G. § 2K2.1(a)(4)(A), recommending an enhanced base offense level of 20. The PSR recommended an additional two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) (Special Offense Characteristics) for Lee's possession of a stolen firearm and a three-level downward adjustment for Lee's acceptance of responsibility. Lee objected to the PSR's use of a base offense level of 20, arguing that his prior UUMV conviction should not be considered a crime of violence for

---

[1]The November 1, 2001 edition of the Guidelines Manual was used in preparing the PSR in this case.

purposes of § 2K2.1(a)(4)(A) and as defined by U.S.S.G. § 4B1.2. The district court overruled this objection. Lee's total offense level score of 19, coupled with a Criminal History Category ("CHC") of VI,[2] yielded a guideline range of 63 to 78 months imprisonment. In addition, the PSR recommended a discretionary upward departure pursuant to U.S.S.G. § 4A1.3, on the basis that the applicable sentencing range did not adequately reflect the seriousness of Lee's criminal history.

At sentencing, the district court agreed with the PSR that "an upward departure [pursuant to U.S.S.G. § 4A1.3] would be appropriate in [Lee's] case," finding that it was "a close question as to whether or not [Lee] should have been sentenced significantly above the top of the guidelines" to a term in excess of the guideline maximum 78-month period of incarceration. The district court, however, decided not to upwardly depart and instead opted to "sentence Lee to the top of the guidelines." Accordingly, on August 3, 2001, the district court sentenced Lee to a prison term of 78 months, a three-year term of supervised release, and a mandatory special assessment of $100.

In his initial appeal to this court, Lee challenged his conviction and sentence. On October 28, 2002, in Lee I, this court affirmed the district court's denial of Lee's motion attacking the constitutionality of § 922(g)(1), but vacated his sentence and remanded the case for resentencing in light of United States v. Charles, 301 F.3d 309 (5th Cir. 2002). In Charles, decided after the district court sentenced Lee but prior to our decision in Lee I, this court sitting en banc held that simple vehicle theft is not a crime of violence under § 4B1.2 (a). Charles, 310 F. 3d at 311. We clarified that "sentences involving possession of a firearm by a felon, which also involve a prior conviction for

---

[2]Lee's CHC of VI was assessed based on Lee's total criminal history score of 21 points, see U.S.S.G. Ch. 5, Pt. A, which included 18 points for Lee's eight prior convictions and three points for having committed the instant offense within two years after his release from imprisonment, U.S.S.G. § 4A1.1(d), and while under a criminal justice sentence of supervised release. Id. § 4A1.1 (e).

an alleged 'crime of violence,' are to have the 'crime of violence' determination made only in accordance with the definition in § 4B1.2(a) and its accompanying commentary." Id. at 312. Our holding in Charles also instructed that an offense is considered a crime of violence "'only if, from the [face of the] indictment, the crime itself or the conduct specifically charged presents a serious potential risk of injury to a person.'" Id. at 314. Because Lee's state indictment for UUMV was not in the record, and thus could not be reviewed, we vacated the sentence and remanded the case to the district court to determine whether, after reviewing the indictment, his UUMV conviction could be deemed a crime of violence as defined in § 4B1.2(a) and its accompanying commentary. Lee I, 310 F.3d at 789. Specifically, our mandate directed the district court to resentence Lee "in light of this [court's] opinion [in Lee I] and our decision in Charles." Id. at 791.

On remand, the district court notified Lee of its tentative conclusion that an upward departure from the guidelines sentencing range would be warranted pursuant to U.S.S.G. § 4A1.3 should it find that the UUMV is not a crime of violence. The district court also issued an order directing the preparation of a revised PSR to reflect this court's opinion in Lee I. Prior to resentencing, Lee filed a written objection arguing that this court's remand order precluded the district court from considering any issue other than whether Lee's UUMV was a crime of violence and thus foreclosed revisiting the propriety of a discretionary upward departure. In the alternative, Lee contended that his criminal history was not sufficiently egregious to justify an upward departure from his CHC of VI. The district court overruled Lee's objections.

At resentencing, the district court reviewed Lee's state indictment and concluded that Lee's UUMV was not a crime of violence, adopting the findings and conclusions of the revised PSR. Reflecting this change, the revised PSR calculated Lee's base offense level to be 14 (in lieu of the 20

4

points assignable for a prior crime of violence), producing a total offense level of 13 once Lee's score was adjusted for possession of a stolen firearm and acceptance of responsibility, as described above. Lee's total criminal history score of 21, placing him at CHC VI, was unaffected by the reversal of the crime of violence determination. The resulting guideline range of imprisonment for Lee's total offense level of 13 and CHC VI was 33-41 months. Consistent with the revised PSR's recommendation, however, the district court decided that a two-year upward departure from the top of the guideline range was warranted and sentenced Lee to a prison term of 65 months on the basis that Lee's CHC of VI did not adequately reflect the seriousness of his criminal history or the likelihood of recidivism. In addition, Lee received three years of supervised release and a $100 fine. Lee now appeals.

## DISCUSSION

On appeal after remand, Lee argues that the district court erred by upwardly departing at resentencing based on its finding that the otherwise applicable 33-41 month guideline range of imprisonment did not adequately reflect the seriousness of Lee's criminal history. Specifically, Lee contends that the mandate issued by this court in Lee I implicitly precluded the district court from considering any issue other than whether Lee's UUMV constituted a crime of violence. Lee argues in the alternative that the district court abused its discretion by imposing a discretionary two-year upward departure from Lee's CHC of VI pursuant to § 4A1.3 because the seriousness of Lee's criminal history was adequately reflected in the guideline sentencing range. The government counters that the upward departure issue was open for reconsideration on remand because the issue was raised in the initial sentencing, was not waived on appeal, and became germane only as a result of the correction of the sentence ordered by this court. The government further argues that the upward

5

departure was justified because the guidelines range underrepresented the seriousness of Lee's criminal history and the likelihood that he would commit other crimes. After a thorough review of the record and this circuit's precedent, we agree with the government's position in both respects.

I.    The scope of our mandate in Lee I

We first address Lee's assertion that the mandate rule, a corollary of the law of the case doctrine, prohibited the district court from reconsidering and imposing a discretionary upward departure pursuant to U.S.S.G. § 4A1.3. Whether the law of the case doctrine foreclosed the district court's exercise of discretion on remand and the interpretation of the scope of this court's remand order present questions of law that this court reviews de novo. Sobley v. Southern Natural Gas Co., 302 F.3d 325, 332 (5th Cir. 2002) (stating that this court "review[s] de novo whether the trial court faithfully and accurately applied our instructions on remand") (internal citation omitted); see also Barrett v. U.S., 100 F.3d 35, 38 (5th Cir. 1996).

The law of the case doctrine posits that ordinarily "'an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal.'" United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002) (Matthews II), cert. denied sub nom, Matthews v. United States, 123 S.Ct. 1604 (2003) (citation omitted). The proscription covers issues we have decided expressly and by necessary implication, Crowe v. Smith, 261 F.3d 558, 562 (5th Cir. 2001) (citation omitted), reflecting the "sound policy that when an issue is once litigated and decided, that should be the end of the matter." United States v. United States Smelting Ref. & Mining Co., 339 U.S. 186, 198 (1950). The law of the case doctrine, however, is an exercise of judicial discretion which "merely expresses the practice of courts generally to refuse to reopen what has been decided," not a limit on judicial power. Messinger v. Anderson, 225 U.S. 436, 444

(1912); Matthews II, 312 F.3d at 657. The doctrine, therefore, "is not 'inviolate,'" but rather permits an appellate court or a district court on remand to deviate from a ruling made by a court of appeal in an earlier stage of the same case in certain exceptional circumstances. Matthews II, 312 F.3d at 657 (citing United States v. Becerra, 155 F.3d 740, 752 (5th Cir.1998)).[3]

These principles apply equally to the mandate rule, "which is but a specific application of the general doctrine of law of the case." Matthews II, 312 F.3d at 657. Absent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. United States v. Bell, 988 F.2d 247, 251 (1st Cir.1993). Moreover, the rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court. See id. at 250. Accordingly, a lower court on remand "'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" Matthews II, 312 F.3d at 657 (quoting Becerra, 155 F.3d at 753) (internal alterations and quotation marks omitted)). In implementing the mandate, the district court must "tak[e] into account the appellate court's opinion and the circumstances it embraces." Sobley v.

---

[3]Three exceptions to the law of the case doctrine permit a court to depart from a ruling made in a prior appeal in the same case: "(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice.'" Matthews II, 312 F.3d at 657 (quoting Becerra, 155 F.3d at 752-53)). In this case, the government asserts in the alternative that our decision in Charles was "an intervening change of law" that allowed the district court to revisit the upward departure issue on remand. As analyzed in further detailed below, we find on the facts presented that the mandate rule did not foreclose reconsideration of this issue on remand because the issue was not waived in the prior appeal and, furthermore, arose out of the correction of the sentence of this court in Lee I. Accordingly, we need not reach, and thus express no opinion on, the merits of the government's alternative argument.

Southern Natural Gas Co., 302 F.3d 325, 333 (5th Cir. 2002) (citing Tollett v. City of Kemah, 285 F.3d 357, 364 (5th Cir.2002) (internal citation omitted)).

To determine whether the district court's actions on remand complied with the mandate rule, this court must determine the scope of its mandate in our opinion vacating Lee's sentence and remanding the matter for resentencing. Matthews II, 312 F.3d at 658; Moore v. Anderson, 222 F.3d 280, 283 (7th Cir. 2000) (stating that a "careful reading of the reviewing court's opinion" is required "[t]o determine what issues were actually decided by the mandate"). As Lee correctly asserts and the government concedes, "[t]his court has adopted a restrictive rule for interpreting the scope of the mandate in the criminal sentencing context." Matthews II, 312 F.3d at 658 (citing United States v. Marmolejo, 139 F.3d 528, 530 (5th Cir. 1998) ("Marmolejo II"). Thus we adhere to the view that, as a general rule, "only those discrete, particular issues identified by the appeals court for remand are properly before the resentencing court." Marmolejo II, 139 F.3d at 530.

Nothing in our mandate in Lee I explicitly required or precluded the district court's consideration on remand of a discretionary upward departure pursuant to U.S.S.G. § 4A1.3. On occasion when we have vacated a sentence based on a specific sentencing-enhancement error and remanded the matter for further proceedings, we have expressly stated that the district court was free to consider other grounds for upward departure, but did not do so in this case. E.g., United States v. Rogers, 126 F.3d 655, 661 (5th Cir. 1997) (vacating a sentence enhanced based on an erroneous finding of career offender status and stating that at "resentencing[,] . . . the district court may of course reconsider the [government's] motion for upward departure" on the ground that the seriousness of the defendant's past conduct was underrepresented by the guidelines). Instead, the particular mandate at issue directed the district court to review Lee's state court indictment to

ascertain whether Lee's prior conviction for UUMV was a crime of violence, in light of this court's en banc opinion in United States v. Charles, 301 F.3d 309 (5th Cir. 2002), and to resentence Lee in accordance with its opinions in Lee I and in Charles. Specifically, we stated:

> Given that [under Charles,] the indictment should be reviewed--and that such a review would aid in clarifying the proper application of the somewhat ambiguous Texas law--we therefore VACATE the sentence and REMAND for re-sentencing consistent with *Charles*.

> For the foregoing reasons, the judgment of the district court is AFFIRMED in part, the judgment of sentence is VACATED and we REMAND the matter for re-sentencing in light of this opinion and our decision in *Charles*.

Lee I, 310 F.3d at 791. The instructions that issued following the opinion provided:

> It is ordered and adjudged that the judgment of the District Court is affirmed in part and vacated in part, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

Relying primarily on our decision in Marmolejo II, Lee contends that our mandate restricted the district court to considering only whether his UUMV was a crime of violence within the meaning of § 4B1.2 and its accompanying commentary as we instructed in Charles--"no more, no less." See Marmolejo II, 139 F.3d at 531. According to Lee, once the district court decided on remand that his state court indictment did not support such a finding, the district court could do nothing other than subtract the crime of violence enhancement from Lee's sentencing calculus, reducing Lee's total offense level score from 19 to 13, and impose a sentence within the resulting guidelines range of 33 to 41 months commensurate with the lower offense level score and Lee's CHC of VI. We disagree.

Cognizant of our strict mandate rule, we nevertheless find that Lee's assertion misapprehends our holding in Marmolejo II and the impact of our Lee I mandate on the scope of issues open for the resentencing court's consideration. In United States v. Marmolejo, 106 F.3d 1213 (5th Cir.1997)

9

("Marmolejo I"), we affirmed the defendant's conviction but reversed sentence reductions for his acceptance of responsibility and his role as a minor participant in a conspiracy, and held that the district court had erred by declining to upwardly depart for possession of a firearm. Marmolejo II, 139 F.3d at 532. Accordingly, we vacated the defendant's sentence and remanded the case for resentencing consistent with our opinion. Id. On remand, the defendant challenged an unappealed aspect of his original sentence, namely, an obstruction of justice enhancement, and sought to introduce new evidence related to that issue. Id. at 530. The district court refused to hear the new evidence because the district court's earlier ruling on the enhancement issue was not appealed by the defendant or the government, and thus became law of the case. Id.

The defendant appealed. Id. Expressing the view adopted by a majority of circuits, the defendant argued that because this court did not explicitly limit the scope of its remand order, he was entitled to a de novo resentencing "requiring the district court to hear all evidence" presented regarding his sentencing regardless of whether those issues were raised in the prior appeal.[4] Id.

_____

[4]As we previously have pointed out, there is a significant circuit split on the issue of the breadth of the scope of a mandate for resentencing on remand. United States v. Hass, 199 F.3d 749, 752 n.2 (5th Cir.1999) ("Hass II"); Marmolejo II, 139 F.3d at 530. A majority of jurisdictions embrace the view that unless the appellate mandate explicitly limits the sentencing issues open for consideration on remand, the district court is free to conduct a de novo resentencing hearing and is not limited only to consideration of those issues related to the remand order. Those circuits hold that when the court of appeals vacates a sentence the district court may, upon remand, take any evidence and hear any argument that it could have considered in the original sentencing proceeding. E.g., United States v. Moore, 131 F.3d 595 (6th Cir. 1997); United States v. Jennings, 83 F.3d 145 (6th Cir.1996); United States v. Cornelius, 968 F.2d 703 (8th Cir.1992); United States v. Ponce, 51 F.3d 820 (9th Cir.1995); United States v. Smith, 116 F.3d 857 (10th Cir.1997). The Second Circuit more recently has adopted a hybrid approach, holding that resentencing following the vacatur of a conviction should be de novo (the majority approach), but that when the court of appeals merely vacates a sentence to correct a specific sentencing error, resentencing should be "limited" "unless the correction of those sentencing errors would undo the sentencing calculation as a whole or the 'spirit of the mandate' otherwise requires de novo resentencing." United States v. Quintieri, 306 F.3d 1217, 1228 (5th Cir. 2002) (stating that unless otherwise directed by the remand order, the district court's

We specifically rejected this assertion. Although we acknowledged that a district court traditionally has broad discretion to consider new factors relevant to a sentencing issue, we clarified that this discretion "is limited to the gathering of relevant facts and evidence on the specific and particular issues heard by the appeals court and remanded for resentencing." Id. (citing United States v. Kinder, 980 F.2d 961, 963 (5th Cir.1992). Adopting the "waiver approach" shared by the D.C., First, and Seventh Circuits, we likewise established that regarding the scope of a remand for resentencing:

> The only issues on remand properly before the district court are those issues which arise out of the correction of the sentence ordered by this court. In short, the resentencing court can consider whatever this court directs--no more, no less. All other issues not arising out of this court's ruling and not raised in the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below.

Marmolejo II, 139 F.3d at 530 (emphasis added) (citing United States v. Whren, 111 F.3d 956, 960 (D.C. Cir. 1997); United States v. Parker, 101 F.3d 527, 528 (7th Cir.1996)); accord, United States v. Tichiarelli, 171 F.3d 24, 32-33 (1st. Cir. 1999). Accordingly, we held that the district court properly refused to reconsider its prior enhancement for obstruction of justice because the defendant could have, but chose not to, challenge that enhancement in Marmolejo I and the issue did not arise out of our mandate in that prior appeal. Marmolejo II, 139 F.3d at 532.

This case, however, presents circumstances that differ significantly from those that were before us in Marmolejo II. That our opinion in Lee I identifies a particular sentencing issue —the crime of violence enhancement— but does not mention § 4A1.3 or say nary a word on the possibility of imposing a discretionary upward departure pursuant to that guideline does not, in itself, foreclose the resentencing court's consideration of a § 4A1.3 departure. On remand from Lee I, the district

---

consideration of new issues is limited to those made newly relevant by the court of appeals' decision) (citations omitted).

11

court reconsidered an unappealed sentencing issue —a discretionary upward departure— that could not have been raised in the initial appeal. It is undisputed that in this case the district court's initial refusal to upwardly depart pursuant to § 4A1.3 was not appealable by the government. Section 3742 (b) of Title 18 provides that the government only may appeal an otherwise final sentence if the sentence "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) [was] less than the [minimum] sentence specified in the applicable guideline range . . . ; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742 (b)(1)-(4).

None of these grounds were present in the instant case. The fact that the district court's refusal to impose a discretionary upward departure at the original sentencing was unappealable in Lee I takes the case outside the realm of Marmolejo II, which involved the district court's discretion to reconsider an appealable issue that was foregone in the initial appeal. We therefore agree with the government that the district court did not exceed the scope of our mandate by reconsidering the upward departure issue at resentencing.

Although Lee concedes that the discretionary upward departure was not appealable, he nonetheless protests that the issue was waived by the government's failure to request in its reply prayer a mandate specifically permitting the district court to revisit this issue on remand. Lee's argument, however, rests on an erroneous understanding of the standard for what constitutes waiver. An issue is not waived if there was no reason to raise it in the initial appeal. See United States v. Hass, 199 F.3d 749, 753 (5th Cir. 1999) (citing Tichiarelli, 171 F.3d at 33), cert denied sub nom. Hass v. United States, 531 U.S. 812 (2000); Whren, 111 F.3d at 960 (stating that while a party "may not revive in the second round an issue he allowed to die in the first," a party "may argue at

12

resentencing that the court of appeals' decision has breathed life into a previously dormant issue"); Parker, 101 F.3d at 528 (holding that issues not raised in the initial appeal and not affected by the remand for resentencing were waived). Indeed, we have previously recognized the principle that "whether a [party] waived an issue for consideration at resentencing [depends on] whether the party had [sufficient] incentive to raise th[at] issue in the prior proceedings." Hass, 199 F.3d at 753 (holding that a mandate vacating the defendant's sentence erroneously imposed under a three-strikes provision and remanding for resentencing barred reconsideration on remand of a different purported sentencing error that was appealable and germane at the time of the first appeal but not raised (citing Tichiarelli, 171 F.3d at 33) (holding that a defendant had not waived his sentencing objection by failing to raise it at the original sentencing where he had no incentive to do so because, by the time of that sentencing, "the district court had already issued a final ruling, memorialized in a published order" rejecting the argument))). We find that the record in this case amply justifies the government's earlier silence quite simply because the enhancement at issue was not appealable in the initial appeal. Contrary to Lee's assertion, our mandate rule does not require that a party raise unappealable sentencing issues in anticipation of every possible contingency that may make such issues germane at a later stage of the proceeding.

While our above finding of nonwaiver alone suffices on the facts presented to preserve the district court's discretion to revisit the upward departure issue at resentencing, we also find that the district court properly implemented our Lee I mandate because the question of whether to upwardly depart to meet certain sentencing objectives, detailed below, "ar[o]se out of the correction of the sentence ordered by this court." See Marmolejo II, 139 F.3d at 530 (citing Whren, 111 F.3d at 960; Parker, 101 F.3d at 527). As in Marmolejo II, we are persuaded by the reasoning of the D.C. Circuit

13

in Whren that an issue not raised in the initial appeal arises out of this court's correction of the sentence when the issue is "made newly relevant by the court of appeals' decision--whether by the reasoning or the result." Whren, 111 F.3d at 960. Encountering this circumstance in United States v. Garcia, 322 F.3d 842, 845 n. 4 (5th Cir. 2003) ("Garcia II"), we determined that where the issue of whether to impose consecutive or concurrent sentences became newly relevant as a consequence of our remand order, the issue "'ar[o]se out of the correction of the sentence ordered by this court' and therefore, [was] properly before this Court on appeal." Id. In Garcia's initial appeal, we affirmed his convictions but vacated his sentence because the indictment had not alleged, and the jury had not found, the drug quantity involved in his offenses as required under Apprendi v. New Jersey, 530 U.S. 466 (2000). United States v. Garcia, 242 F.3d 593, 599 (5th Cir. 2001) ("Garcia I"). We also held that on the facts presented "*Apprendi* also requires that the defendant's term of imprisonment be reduced from 97 months to no more than 60 months," the maximum sentence allowed under the applicable substantive criminal statute. Id. Our remand order directed the district court to resentence Garcia "consistent with this opinion." Id. at 600.

On remand, however, Garcia's offense level and CHC was unchanged, yielding a sentencing guideline range of 97 to 121 months of imprisonment. Garcia II, 322 F.3d at 844. At resentencing, the district court accepted Garcia's argument that our mandate placed a 60-month cap on his total sentence of imprisonment, rather than a 60-month cap on each count, requiring the district court to impose concurrent sentences. The government appealed, arguing that the district court's failure to impose consecutive sentences to meet the 97-month guideline minimum was effectively an impermissible "downward departure." We agreed and held that the district court was required to impose consecutive sentences to satisfy the guidelines' minimum, notwithstanding the language in our

14

remand order. Though the issue of consecutive sentences was not raised in Garcia I and our mandate identified a specific sentencing error for correction on remand, the mandate rule did not foreclose the district court's consideration of consecutive sentences because that issue arose out of our correction of the *Apprendi* error.

In this case, the district court relied on the availability of the crime of violence enhancement in order to meet the guidelines' objectives of, among other things, deterrence and protection of the public. Without the benefit of our en banc decision in Charles, the district court properly applied our then-controlling circuit precedent holding that UUMV is a crime of violence. It is clear from the record that had the district court had the benefit of Charles at the original sentencing, the district court would have imposed an upward departure at that time. As noted above, the district court found that it was "a close question as to whether or not [Lee] should have been sentenced significantly above the top of the guidelines" to a term in excess of the guideline maximum 78-month period of incarceration. The district court ultimately declined to upwardly depart at the original sentencing because it found that a 78-month sentence adequately represented Lee's criminal history. As we recognized in Lee I, however, "as a practical matter Charles removed the basis for the district court's determination that Lee's UUMV was a crime of violence." Lee I, 310 F.3d at 791. Moreover, the resentencing court's application of Charles as directed by our Lee I mandate had the effect of lowering Lee's base offense level from 20 to 14, producing a sentencing range of 33-41 months, and thereby created the need to upwardly depart to meet the guidelines' objectives. As in Garcia II, in this case the sentencing issue became newly relevant as a consequence of the correction of the sentence ordered by this court in the initial appeal.

Lee attempts to distinguish Garcia II on the basis that, in that case, the resentencing court was

15

statutorily required to impose consecutive sentences in order to meet the statutory minimum term of incarceration because, as a consequence of our correction of the *Apprendi* error in Garcia I, Garcia's sentence fell below the statutory minimum range. Lee argues that, by contrast, this case involves whether our mandate precluded the imposition of a discretionary upward departure. This argument is unavailing. While we agree that this factual distinction between the two cases exists, we find this distinction immaterial to our interpretation of the mandate rule that an issue arises out of the correction of the sentence when it is made newly relevant by the court of appeal's decision---whether by the reasoning or the result. In this case, as in Garcia, the sentencing objective at issue became extant as a consequence of our mandate. Accordingly, we find no error in the district court's imposition of a discretionary upward departure at resentencing.

II.      The propriety of the discretionary upward departure pursuant to § 4A1.3

Having determined that the district court did not exceed the scope of our Lee I mandate, we turn to Lee's next assertion that the district court's imposition of an upward departure in this case was not warranted.

A.      Standard of review

Previously, we reviewed a district court's decision to upwardly depart from the applicable guideline range for abuse of discretion. U.S. v. Hefferon, 314 F.3d 211, 227 (5th Cir. 2002) (citing Koon v. United States, 518 U.S. 81, 96-100 (1996)). As of April 30, 2003, however, the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("Protect Act"), Pub.L. No. 108-21, 117 Stat. 650 (2003), has changed the applicable standard governing our review of sentencing appeals to require de novo review, "but only when courts of appeals are

16

considering determinations under subsections (3)(A) or (3)(B) of 18 U.S.C. § 3742(e)."[5] United

States v. Bell, 351 F.3d 672, 675 (5th Cir. 2003). Thus, as a threshold matter, we must determine

whether either of these subsections apply in the instant case. See id. at 675-76.

Subsection 3(A), pertaining to a district court's failure to include a written statement of

reasons for the departure, is inapplicable in this case. Therefore, unless Subsection 3(B) applies, our

review is for abuse of discretion. Subsection 3(B) requires that courts of appeals determine whether

"the sentence departs from the applicable guideline range based on a factor that-- (i) does not advance

the objectives set forth in section 3553(a)(2); or (ii) is not authorized under section 3553(b); or (iii)

is not justified by the facts of the case." Bell, 351 F.3d at 676. In Bell, we interpreted this provision

"to mean that if a district court departs based on a factor that does advance the objectives set forth

in section 3553(a)(2), then review of that determination does not fall under subsection 3(B)," and

therefore, is not conducted de novo.[6] Id.

---

[5]The Protect Act became effective after Lee's resentencing. However, we recently held in
Bell that the Act's "newly-announced standard[] of review" applies retroactively because a change
in the standard of review is procedural rather than substantive. 351 F.3d at 674 (citing United States
v. Mejia, 844 F.2d 209, 211 (5th Cir.1988)). Thus, the Act's modified standard of review governs
our review of Lee's sentencing.

[6]We note that contrary to Bell's reading of § 3742(e)(3)(B), a majority of circuit courts that
have considered the issue have concluded that the Protect Act's de novo review governs the
determination of whether the district court's departure was based on any one of the three
impermissible grounds listed in § 3742(e)(3)(B)(i)-(iii). E.g., United States v. Stulz, ---F.3d---, 2004
WL 64958, *2 (2d Cir. Jan. 15, 2004) (observing that the Protect Act . . . requires [courts of
appeals] to review departures from the Guidelines de novo) (citation omitted); United States v.
Mallon, 345 F.3d 943, 946 (7th Cir. 2003) (stating that "with respect to departures on one of the
grounds listed in § 3742(e)(3)(B) 'the court of appeals shall review de novo the district court's
application of the guidelines to the facts'"); United States v. Flores, 336 F.3d 760, 764 (8th Cir.
2003) (noting that the court reviews de novo whether a departure is justified given the particular facts
of a case); United States v. Barragan-Espinoza, 350 F.3d 978, 981 (9th Cir. 2003) (stating that
"the PROTECT Act now requires that we review de novo the propriety of the district court's
departures"); United States v. Jones, 332 F.3d 1294, 1300 (10th Cir. 2003) (same). While the scope

17

We find that the objectives set forth in § 3553(a)(2) pertaining to "the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" provided the bases for the district court's departure in this case. See id. at 676. At resentencing, the district court specifically referred to the defendant's recidivism, the public's need for protection, and the defendant's failed attempts to undergo drug abuse rehabilitation. The district court further expressed the need to incapacitate the defendant for a sufficient length of time to meet these considerations, stating:

> The defendant was referred to a drug rehabilitation program in the community once he was released from prison, yet he chose not to take advantage of this program. He continued to use drugs and commit crimes which resulted in [the] revocation of his term of supervised release.

> The defendant's revolving door pattern of criminal behavior and his unwillingness to make an attempt to stop using drugs has convinced this court that an upward departure is necessary to incapacitate the defendant to protect the public and give him more time to address his drug addiction in the Bureau of Prisons drug rehabilitation program.

Accordingly, we conclude that the district court's evident concerns were "factor[s] that . . . advance[s] the objectives set forth in section 3553(a)(2)" upon which the district court based its upward departure. See 18 U.S.C. § 3742(e)(3)(B)(i). Because Lee's sentencing does not involve a determination under Subsection 3(A) or 3(B), we review the district court's decision to upwardly

---

of our review is governed in this case by the standard as articulated in Bell, 351 F.3d at 676, we nevertheless find that the result in the case before us would be the same under either an abuse of discretion or a de novo review.

depart for abuse of discretion.

B.      The upward departure

Lee argues that the district court abused its discretion by imposing a two-level upward departure at resentencing pursuant to § 4A1.3, arguing that the record does not reflect that the guideline range applicable to his Criminal History Category ("CHC") of VI underrepresented the seriousness of his prior offenses and the likelihood that he would reoffend. Lee asserts that his offenses were not atypical for a CHC of VI. Pointing to the policy statement accompanying § 4A1.3, Lee also argues that, in determining whether an upward departure was warranted on the facts of this case, the district court erred by failing to consider the nature of his prior offenses rather than simply their number.

Ordinarily, a district court must sentence a defendant within the applicable guideline range. Koon, 518 U.S. at 85. The guidelines are intended to apply to a "heartland" of cases, i.e., "a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. ch.1 pt.A, intro. comment 4(b). A court may depart from the defendant's range, however, if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Pursuant to Section 4A1.3, such a departure is warranted when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood he will commit further crimes. For example, this might occur "when a defendant's prior convictions are stale (i.e., beyond the limitations period), when a defendant's prior sentences have been consolidated, when the defendant has been afforded extreme leniency by a sentencing court, or when the defendant has committed offenses while on bail, parole or probation." United States v. Carpenter, 963 F.2d

19

736, 744 (5th Cir. 1992) (citing United States v. Jones, 905 F.2d 867, 869 (5th Cir.1990)).  Though Lee's CHC of VI is the highest criminal history category, the sentencing guidelines nonetheless contemplate that "there may, on occasion, be a case of an egregious, serious criminal record in which the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history."  U.S.S.G. § 4A1.3, p.s.

We have reviewed the record in this case with great care.  Fairly viewed, we find that the district court did not abuse its discretion by upwardly departing from Lee's sentencing range of 33-41 months to a term of 65 months of imprisonment.  Lee's criminal history is checkered, to say the least.  The district court found that he was a "habitual offender who needs a longer period of incarceration than the 41-month maximum range under the guidelines."  At Lee's resentencing, the district court properly "evaluated the extent and nature of the defendant's criminal history and his offender characteristics as required by statute [pursuant to 18 U.S.C. § 3553]."  Lee's total criminal history score of 21 was calculated based on his eight prior convictions, including five felony convictions, which he received in less than 14 years.  For a defendant to reach a CHC of VI, only thirteen criminal history points are required; thus Lee's score exceeded the minimum needed for a CHC of VI by eight criminal history points.  The record consistently shows that Lee has been afforded considerable leniency over the past 14 years, yet has continued to reoffend despite several opportunities to undergo treatment for his drug abuse.  The district court stated that Lee's "prior criminal history reflects that he has been punished by fines, probated sentences, brief jail terms, and short prison sentences" noting that Lee "also received lenient sentences through plea bargaining agreements."  Further, Lee is not an individual for whom these lenient penalties appear to have had any deterrent or reforming effect for he has had his probation or supervised release revoked on at least three occasions and has spent

20

a large portion of his adult life in a "revolving door" leading in and out of prison. Accordingly, we see nothing unreasonable in the extent of the district court's upward departure, which we note still leaves Lee's sentence well below the 78 months he had received at his initial sentencing.

Finally, Lee argues that the district court erred by focusing exclusively on the number of his prior offenses in deciding an upward departure was justified, pointing out that the policy statement accompanying § 4A1.3 provides that "the nature of the prior offenses . . . is often more indicative of the seriousness of the defendant's criminal record." U.S.S.G. § 4A1.3, p.s. It is true that all but one of Lee's crimes was non-violent. But the record is replete with convictions for unlawful possession of a firearm, drug crimes, and theft that pose an obvious danger to society. After closely reviewing the record in this case, we cannot say that the district court failed to consider the egregiousness or seriousness of Lee's criminal history, as Lee avers. Rather, we are convinced that the upward departure was amply justified based on the reasons stated by the district court and our foregoing analysis.

## CONCLUSION

Because we find, on the facts presented, that the district court did not exceed the scope of our Lee I mandate by reconsidering the imposition of an upward departure and that such departure was justified, we AFFIRM the defendant's sentence.

AFFIRMED.