# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20325

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ARUN SHARMA; KIRAN SHARMA,

Defendants – Appellants.

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2015

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-409-1

Before REAVLEY, JONES, and ELROD, Circuit Judges.

PER CURIAM:*

This cases requires us to review a $37 million restitution award entered against Arun Sharma and Kiran Sharma, who pleaded guilty to operating a decade-long insurance fraud scheme. This is our second opportunity to review the district court's calculation of restitution, as the Sharmas previously appealed their first judgment and sentence, which included a $43 million restitution award. We vacated the first award and remanded for resentencing

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20325

to correct errors in the restitution calculation. This appeal follows resentencing. We AFFIRM.

## I.

Arun and Kiran Sharma, married physicians licensed in the state of Texas, owned and operated two health clinics that predominately offered prescriptions for painkillers and injections for temporary relief of joint and muscle pain. Throughout the relevant period, the Sharmas fraudulently billed insurers (including Medicare, Medicaid, and several private insurance companies) for pain injections that they never actually administered to their patients. Most of the Sharmas' fraud involved "upcoding," a practice through which the Sharmas would submit bills to insurers claiming that they had administered more specialized, expensive injections when they had actually administered only basic injections. For example, the Sharmas typically administered simple "trigger point injections" to their patients, which involved using short needles that were targeted at the outer muscles. However, the Sharmas represented to the insurance companies that they were administering deep-tissue injections, including: facet-joint, paravertebral, sacroiliac nerve, sciatic nerve, and various other nerve block, injections. These required longer needles aimed at targets deeper in the tissue or skeletal structure such as the spine.

Throughout the course of the fraud, the Sharmas billing suggested that they saw a remarkable number of patients each year, averaging as many as 109 patients per day in 2005. The Sharmas tried to convince all of their patients to take shots at every office visit, and they put many of their patients on a regimen of shots every two weeks. Beyond just the upcoding, the Sharmas also would often bill insurers for fictitious injections and for "phantom" office visits that never took place.

No. 13-20325

Authorities learned of the fraud after two foreign medical graduates[1] working for the Sharmas sent an anonymous letter to the Texas Medical Board and various insurers detailing the Sharmas' illegal activities. After an investigation, a grand jury indicted the Sharmas on sixty-four counts of conspiracy, health-care fraud, mail fraud, unlawful distribution of controlled substances, and money laundering. The Sharmas each pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to commit health-care and mail fraud and one substantive count of health-care fraud, in violation of 18 U.S.C. §§ 371, 1347.

At the first sentencing, the district court sentenced Arun Sharma to 180 months of imprisonment and three years of supervised release. The district court sentenced Kiran Sharma to 96 months of imprisonment and three years of supervised release. In addition to their prison terms, the district court ordered the Sharmas to pay restitution, jointly and severally, to Medicare, Medicaid, and various private insurers in the total amount of $43,318,170.93. To arrive at this figure, the district court adopted the calculation offered by the government in its sentencing memorandum, which relied on facts in the Presentence Investigation Report (PSR) and the Sharmas' plea agreements. The amounts in the PSR came from written "victim impact statements" and electronic claims data—information that insurers had submitted which detailed the amounts they had paid to the Sharmas.

---

[1] The Sharmas regularly hired physicians who had graduated from medical schools outside of the United States and the Sharmas' plea agreements refer to these employees as "foreign medical graduates." Within the medical community, such physicians were earlier considered "foreign medical graduates," but the American Medical Association now refers to them as "international medical graduates," which we use hereinafter.

The Sharmas employed international medical graduates to help them operate their deluged clinics and add fictitious information to the progress/procedure notes that formed the basis of the bills that they sent to insurers.

No. 13-20325

The Sharmas objected to the restitution award recommended in the PSR on the grounds that: (1) it included amounts that insurers paid for procedures that were entirely outside the scope of the fraud; and (2) it did not include offsets for the value of legitimate and medically necessary trigger point injections. The Sharmas submitted an alternative restitution figure of $21,028,963.61 prepared by their forensic accountant. The district court rejected the Sharmas' calculation and adopted the figures in the PSR, ordering restitution in the amount of $43,318,170.93, to be paid jointly and severally. The Sharmas appealed.[2]

On appeal, we vacated the restitution award because the "amount exceeded the insurers' actual losses by millions of dollars." *United States v. Sharma (Sharma I)*, 703 F.3d 318, 327 (5th Cir. 2012). For example, we noted that the district court erroneously included payments that insurers made during the year before the admitted fraudulent conduct had even begun. *Id.* at 323–24. The restitution award also included amounts paid for treatments and procedures that were not considered part of the injection-related fraud. *Id.* at 324. We held that these errors, along with the Sharmas' rebuttal

---

[2] After the district court issued its order, and while the Sharmas' direct criminal appeal was pending, the two international medical graduates who reported the fraud, Samuel Babalola and Kayode Samuel Adetunmbi, filed a *qui tam* action under both the False Claims Act (FCA) and the Texas False Claims Act, to recover a share of the forfeiture in the Sharmas' criminal action. The district court, interpreting the FCA, granted the government's motion for partial summary judgment, concluding that the FCA requires filing the *qui tam* complaint at or before the time of the restitution order in the related criminal case. *United States ex rel. Babalola v. Sharma*, No. H-11-4026, 2013 WL 431821, at *3 (S.D. Tex. Feb. 1, 2013). Because the two graduates filed their FCA action after the district court issued its order, they could not share in the restitution. We affirmed. *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 163 (5th Cir.), *cert. denied*, 134 S. Ct. 2856 (2014).

In addition, the Sharmas' son, Guarav Sunny Sharma, filed a third-party petition under 21 U.S.C. § 853(n) for an ancillary proceeding to determine his rights to property forfeited as part of his parents' criminal convictions. The district court dismissed the petition and we affirmed on the basis that Guarav did not timely file his petition after receiving actual notice of the preliminary forfeiture order on March 3, 2011. *United States v. Sharma*, 585 F. App'x 861, 861–62 (5th Cir. 2014).

evidence, sufficiently undermined the reliability of the PSR. *Id.* We further held that the district court abused its discretion, and we vacated its judgment and remanded the case for resentencing.[3] In the remand order, we instructed the district court to recalculate the restitution award "consistent with [our] opinion and *based solely on evidence already in the record* [and to] . . . specify, on the record, its findings and reasons regarding each insurer's actual loss." *Id.* at 327 (emphasis added).

In the first appeal from the first sentencing hearing, we also held that the district court did not abuse its discretion in denying offsets to the restitution award for injections that the Sharmas argued were "medically necessary or reimbursable by the insurers." *Id.* As we explained, the Sharmas bore the burden of proving the offsets and, based on the record, they presented no competent evidence to show that the injections were medically necessary procedures that warranted legitimate reimbursement.[4] *Id.* at 326.

Before resentencing, the Sharmas filed a joint motion for continuance and discovery seeking to review their seized patient files "for information that might establish the medical necessity of certain procedures" so that they could prove they were entitled to offsets. The district court summarily denied the motion.

At resentencing, the government contended that the proper restitution award was $37,636,436.39, and the Sharmas, again, argued that it was $21,028,963.61, which included their requested offsets. Excluding offsets, the

---

[3] We also vacated the amount of the Sharmas' forfeiture money judgment and remanded it for recalculation because, pursuant to the Sharmas' plea agreements, the forfeiture award must match the restitution award.

[4] The Sharmas sought panel rehearing in *United States v. Sharma (Sharma I)*, 703 F.3d 318 (5th Cir. 2012), which we denied. Arun also petitioned the United States Supreme Court to review our denial of his request to proceed pro se in this appeal. The Supreme Court denied his petition. *See Sharma v. United States*, 134 S. Ct. 78 (2013).

Sharmas essentially agreed with the government's new calculation; the Sharmas' expert calculated gross restitution at $37,670,826.32, slightly higher than the government's figure.

The district court did not issue a written opinion, but dictated a "mini-opinion" into the transcript.  As the district court explained, it "adopt[ed] the methodology and amounts set out by the government in its resentencing memorandum, including the list of injection-related procedure codes and the dollar amount paid by each insurer for injection-related procedures during the time period of the conspiracy."  The court explained that it had considered the electronic claims data and the Sharmas' expert report prepared by their accounting expert.   Reading our opinion from the first appeal into the transcript, the district court rejected the Sharmas' claims for offsets.   The district court stated that it agreed with our reasoning in the first appeal, specifically our reasoning that the government provided sufficient evidence that the trigger-point injections were illegitimate, and that the Sharmas failed to show they were medically necessary.  The district court explained that it "formally ma[de] the same factual findings" as the findings we made in the first appeal.  The district court also overruled all of the Sharmas' objections to the PSR report and addenda, and adopted as its findings the facts in those documents.   The district court accepted the government's figure in the resentencing memorandum and found "that 18 fraud victims incurred an actual loss of $37,636,436.39."  The district court again sentenced Arun to 180 months of imprisonment and three years of supervised release.  It again sentenced Kiran Sharma to 96 months of imprisonment and three years of supervised release.  The district court listed on Arun's amended judgment the restitution amount awarded to each insurer.  However, it did not include the same list on Kiran's amended judgment, writing only "See Attached List"

under "Name of Payee," and under "Restitution Ordered," including only the combined total awarded. The district court failed to attach the list.

The Sharmas filed the instant appeal. The Sharmas argue that the district court abused its discretion by denying their motions for a continuance and further discovery. They contend that they were first made aware that they bore the burden of proving offsets when we ruled on their first appeal. Therefore, they argue, by denying their motions, the district court denied them the opportunity to satisfy their burden of proving offsets by presenting evidence that the trigger point injections were medically necessary. This, they assert, violated their due process rights.

In addition, the Sharmas argue that the district court did not follow our remand instructions because it failed to specify its findings and reasons for ordering the restitution attributable to each insurer. Arun further argues that the district court abused its discretion because its restitution award included amounts paid for procedures that the government has not shown to be part of the fraud. More specifically, he argues that while the procedures included in the restitution award are injection-related, the government has failed to show that they are the types of injections the Sharmas admitted to billing during their conspiracy.[5]

---

[5] Kiran Sharma also argued in her brief that she did not receive an adequate explanation of the basis for her restitution award because the district court failed to attach to her amended judgment a list of the individual insurers' losses—the district court instead included only the combined total restitution amount. However, her counsel conceded at oral argument that this issue alone would not warrant a remand for resentencing. In any event, Kiran's amended judgment did indicate that her restitution obligation ran jointly and severally with Arun's and identified Arun's amended judgment by cause number, which contained the detailed figures. Moreover, the district court stated at the resentencing hearing that it was adopting the "methodology and amounts set out by the Government in its resentencing memorandum," a document which was itself entered into the record. The fact that the district court incorporated that content by reference, at the hearing rather than attaching it to the amended judgment, is of no consequence. The district court's explicit incorporation of the government's resentencing memorandum in its sentencing judgment was

No. 13-20325

## II.

We review *de novo* whether a district court faithfully and accurately applied our instructions on remand and whether the law of the case doctrine bars re-examination of an issue of fact or law already decided on appeal. *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004). We review the amount of a district court's restitution award for abuse of discretion. *United States v. Mann*, 493 F.3d 484, 498 (5th Cir. 2007). Factual findings supporting the award are reviewed for clear error. *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006). Even absent express findings, we may affirm a restitution award if "the record provides an adequate basis to support the restitution order." *United States v. Blocker*, 104 F.3d 720, 737 (5th Cir. 1997).

## III.

For the reasons discussed below, the Sharmas' arguments are without merit. They are not entitled to offsets, the district court correctly followed our remand instructions, and the evidence in the record supports the district court's restitution award.

As an initial matter, the law of the case doctrine controls our review of whether the district court should have applied the offsets requested by the Sharmas, as this issue was already decided in the Sharmas' first appeal. "The law of the case doctrine posits that ordinarily 'an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal.'" *Lee*, 358 F.3d at 320 (quoting *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)). The doctrine reflects the "'sound policy that when an issue is once litigated and decided, that should be the end of the matter.'" *Lee*, 358 F.3d at 320 (quoting *United States*

---

sufficient to satisfy our instruction to "specify, on the record, its findings and reasons regarding each insurer's actual loss."

No. 13-20325

*v. United States Smelting Ref. & Mining Co.*, 339 U.S. 186, 198 (1950)). "[O]nly those discrete, particular issues identified by the appeals court for remand are properly before the resentencing court." *United States v. Marmolejo*, 139 F.3d 528, 530 (5th Cir. 1998). "In short, the resentencing court can consider whatever this court directs-no more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below." *Id.* at 531.[6]

In the first appeal, we directly addressed the offsets issue, holding that the district court did not abuse its discretion in determining that the Sharmas failed to meet their burden of proving offsets.[7]  *Sharma I*, 703 F.3d at 326.  In

---

[6] In contrast, some circuits allow district courts the discretion to expand the scope of resentencing "unless the district court's discretion is specifically cabined." *E.g.*, *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011).  In those circuits, the district court should "look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope." *Id.*

[7] In *Sharma I*, we reasoned that:

The government presented unrebutted evidence that Arun (1) deliberately misdiagnosed patients as having rheumatoid arthritis and put them on an injection regimen, (2) tried to convince all of his patients to have trigger-point injections at every visit, (3) required patients who declined injections to sign mendacious acknowledgments that they had received the treatments before he would prescribe pain medication, and (4) administered injections in an assembly-line fashion without taking routine sanitary precautions.  The Sharmas also employed six foreign medical graduates to fabricate bills en masse.  Finally, the government asserted in its sentencing memorandum that patients who later went to different physicians were "universally" taken off trigger-point injections.

The Sharmas offered little in the way of concrete evidence to rebut the government's contentions.  Their plea agreements stated that some injections were provided, but did not represent that those injections were medically necessary or that the physicians would have been reimbursed for them by the insurers.  Although the Sharmas provided anecdotal statements from patients claiming some degree of pain relief, the victims of the crimes of conviction were the insurance companies, not the patients.  The Sharmas did not produce

our remand instruction, we said nothing about reconsidering the offsets issue at resentencing. However, we did instruct the district court to recalculate the gross restitution amount, address whether the government had offered sufficient evidence to support that amount, and conform the forfeiture money judgment to the new restitution award. *Sharma I*, 703 F.3d at 327. Given our circuit's application of the law of the case doctrine, these were the exclusive issues for consideration at resentencing and our ruling on the offsets was binding on the Sharmas at resentencing and in this appeal.

Moreover, despite their argument to the contrary, denying the Sharmas' request for offsets does not violate their due process rights. The Sharmas contend that our allocating to them the burden of proving offsets in *Sharma I*, and, subsequently, the district court's denying their motions for a continuance and for further discovery before resentencing,[8] violate their due process rights because, when developing the record at initial sentencing, they were unaware of their burden. To be sure, actual losses under the Mandatory Victims Restitution Act (MVRA), codified at 18 U.S.C. §§ 3613A, 3663A–64 (which is

---

competent evidence suggesting that even one injection to even one patient was medically necessary and met the insurer's reimbursement standards.

703 F.3d at 326.

[8] We review the denial of a request for continuance under an abuse of discretion standard. *United States v. Walters*, 351 F.3d 159, 170 (5th Cir. 2003). "To prevail, the movant must show that the denial resulted in specific and compelling or serious prejudice." *United States v. Barnett*, 197 F.3d 138, 144 (5th Cir. 1999) (internal quotation marks omitted). Likewise, we review the denial of a request for discovery for abuse of discretion. *United States v. Conn*, 657 F.3d 280, 284 (5th Cir. 2011).

It is not exactly clear that the Sharmas' adequately preserved their due process argument given that they did not specifically raise this issue at resentencing. *See United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991) (explaining that to preserve an issue, a defendant must "make and factually develop in the district court all arguments"). Accordingly, their due process argument may be subject to plain-error review. As discussed above, however, the Sharmas cannot prevail even under an abuse of discretion standard.

the basis for ordering restitution in this case) cannot "include any amount that the insurer would have paid had the defendant not committed the fraud." *Sharma I*, 703 F.3d at 324; *see also United States v. Klein*, 543 F.3d 206, 215 (5th Cir. 2008). However, since at least 1998, we have interpreted 18 U.S.C. § 3664(e) to require shifting to the defendant the burden of proving offsets. *See United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998) ("[W]e conclude that justice requires that the burden of establishing any offset to a restitution order should fall on the defendant." (internal quotation marks omitted)).[9] We have, in several subsequent cases, approved shifting "at least a portion of the burden to a defendant to establish his entitlement to a restitution credit [i.e., offsets]." *Sharma I*, 703 F.3d at 325–26; *see, e.g., United States v. Loe*, 248 F.3d 449, 470 (5th Cir. 2001) (affirming the denial of offsets where the defendant was unable to provide reliable evidence supporting its claims); *United States v. Edet*, No. 08-10287, 2009 WL 552123, at *3 (5th Cir. Mar. 5, 2009) (denying offsets where a defendant could not offer evidence that Medicare would have paid for the equipment at issue absent his fraud). At least two other circuits similarly allocate the burden of proving offsets to the defendant. *See United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011); *United States v. Elson*, 577

---

[9] As we further explained in *United States v. Sheinbaum*:

Logically, the burden of proving an offset should lie with the defendant. [Section 3664(e) of Title 18 of the United States Code] allocates the various burdens of proof among the parties who are best able to satisfy those burdens and who have the strongest incentive to litigate the particular issues involved. Having investigated the crime and wishing to provide as strong a deterrent as possible, the government is best suited to persuade the court as to the amount of loss caused by the offense. On the other hand, the defendant is better positioned to proffer evidence about his own financial resources and needs, and his desire to lower his restitution order gives him the incentive to litigate such mitigating circumstances.

136 F.3d 443, 449 (5th Cir. 1998).

F.3d 713, 734 (6th Cir. 2009). Given these precedents, the Sharmas cannot claim that they were unaware of their burden.[10]

Furthermore, the Sharmas did in fact have notice that the medical necessity of the injections was at issue in the first sentencing. The government's filings continually challenged the validity of not only the specialized injections, but also the trigger point injections. The government's initial sentencing memorandum discussed at length the reasons why even the trigger point injections were illegitimate: (1) the Sharmas routinely diagnosed insured patients with arthritis regardless of test results; (2) drug patients who refused shots were required to sign acknowledgements saying that they had received them; (3) shots were administered without following sanitation protocols; (4) employees added false information to progress and procedure reports; (5) the Sharmas did not "spen[d] enough time with any of the 'pain' patients to properly evaluate their medical needs"; and (6) patients who left the Sharmas universally reported that their new doctors discontinued the shots as medically unnecessary. These allegations, at the very least, informed

---

[10] The Sharmas, citing *Bell v. Berson*, 402 U.S. 535, 541–42 (1972), argue that due process requires a hearing to be meaningful and appropriate to the related case, and that a hearing that "excludes consideration of an element essential to" deciding the issue fails to meet this due process standard. The Sharmas also cite *United States v. Klein* as an example where we have remanded to give the district court an opportunity to credit offsets. However, neither of these authorities supports the Sharmas' argument here.

*Bell* involved a state administrative hearing in which a driver's license was revoked without considering liability, a factor that played a "crucial role" in implementing the policies of the governing statute. The administrative agency adjudicating the matter foreclosed the driver's opportunity to be heard on the issue. In contrast, here, the district court did not foreclose the Sharmas' *opportunity* at the first sentencing proceeding to argue their offsets claim. They had the opportunity to do so as part of the sentencing process, and they did in fact present some evidence on the issue.

Similarly, *Klein* does not help the Sharmas' argument. Although we remanded a restitution order to the district court for recalculation because it failed to discount for offsets, we did so because the government did not dispute that the procedures were legitimate; the dispute was instead over how the defendant billed insurers for those procedures. *Klein*, 543 F.3d at 215. For reasons already explained, that is not the case here.

the Sharmas that the government intended to establish that most, if not all, of their injections were unnecessary and fraudulent.

## IV.

The only remaining issues in this appeal are whether the district court abused its discretion in recalculating the gross restitution amount and whether it adequately followed our remand instructions. We have reviewed the record, including the underlying data, and are satisfied that the district court's restitution award includes only amounts paid pursuant to the Sharmas' fraudulent scheme.

> Under the MVRA, restitution is limited to the

> actual loss directly and proximately caused by the defendant's offense of conviction. An award of restitution cannot compensate a victim for losses caused by conduct not charged in the indictment or specified in a guilty plea, or for losses caused by conduct that falls outside the temporal scope of the acts of conviction.

*Sharma I*, 703 F.3d at 323 (citing *United States v. Hinojosa*, 484 F.3d 337, 343 (5th Cir. 2007)). As we explained in *Sharma I*, the restitution award in this case should exclude payments for non-injection-related procedures given that those are outside the scope of the offense of conviction.[11]  *Sharma I*, 703 F.3d at 323. In addition, every dollar in the restitution award must be supported by record evidence. *United States v. Arledge*, 553 F.3d 881, 899 (5th Cir. 2008).

---

[11] The probation officer concurred with the methodology in the resentencing memorandum but noted in the PSR that he "believes the restitution statute allows for additional losses associated with the fraudulent medical examinations, x-rays, and tests, as cited in the Indictment as part of the scheme under the counts of conviction . . . ." But, the probation officer understood our first opinion to require a more conservative approach. In addition, despite the Sharmas' admissions in their plea agreements that they billed insurers for some office visits that never occurred, the government explained in its resentencing memorandum that, "given the difficulty of separating out the phantom visits from the real visits," it decided to take a conservative approach in calculating its restitution figure and assumed that all visits were legitimate.

In their plea agreements, the Sharmas pleaded guilty only to conspiracy and fraud arising out of injection-related procedures, which excludes some of the other procedures they offered at their clinics (e.g., allergy-related consultations and medication). However, Arun argued for the first time at resentencing that even some of the injection-related procedures that the government included in its calculation (which are listed by "procedure codes" in Attachment A of the government's resentencing memorandum) are outside the categories of injections that comprise their offense (as delimited in their plea agreements). Arun contends that the government failed to meet its burden of proving that every code in its resentencing memorandum should be included in the calculation.

The government argues that the mandate rule[12] prevents Arun from raising this new argument after remand. *See Marmolejo*, 139 F.3d at 530–31 ("All other issues not arising out of this Court's ruling and not raised before the appeals court, *which could have been brought in the original appeal*, are not proper for reconsideration by the district court below.") (emphasis added). In *United States v. Hamilton*, a case involving a Medicare fraud scheme, we held that the defendants could not argue for the first time in their second appeal that the district court improperly included lawfully-obtained proceeds in its restitution award. 440 F.3d 693, 697 (5th Cir. 2006). Likewise, we barred another defendant from seeking reductions in restitution for actual services he

---

[12] *See United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) ("The *mandate rule . . .* prohibits a district court on remand from reexamining an issue. . . . [It] cover[s] issues decided both expressly and by necessary implication . . . .") (emphasis in original). There are three scenarios excepted from application of the mandate rule, none of which, according to the government, are applicable here: (1) introducing evidence at a subsequent trial that is substantially different; (2) an intervening change in controlling authority; and (3) a determination that the earlier decision was clearly erroneous and would work a manifest injustice. *Id.*

provided because he did not raise his arguments in his original appeal. *United States v. Isiwele*, 493 F. App'x 562, 563 (5th Cir. 2012).

Arun did not raise this new argument at the first sentencing hearing or in the first appeal. The Sharmas argued at their first sentencing hearing that many of the insurer payments should not have been included in the loss calculation because they were outside the time period of the conspiracy, were not injection-related, and/or were based on the insurer's claim despite the insurer's uncertainty whether the claim was related to the Sharmas' guilty plea. Arun first raised this new argument about excluding payments for certain types of injections at the second sentencing hearing and again in his brief in this appeal. At resentencing, the district court read our remand instructions in *Sharma I* to require recalculating the restitution figure to include all injection-related payments supported by the record. This was a fair reading of *Sharma I.*

Even reviewing the injection-related payments, the district court adequately specified the basis for its calculation. In issuing its amended restitution award, the district court stated on the record that it was "adopt[ing] the methodology and amounts set out by the Government in its resentencing memorandum, including the injection-related procedure codes and the dollar amount paid by each insurer for injection-related procedures during the time of the conspiracy." The resentencing memorandum included Attachment C, a spreadsheet detailing the individual losses for each of the eighteen insurers, and Attachment D, the underlying electronic claims data. Relying on this data (rather than just the victim impact statements filed by insurers that proved problematic in the first restitution calculation), the government narrowed the payments in two main ways. First, it included only payments made for claims filed during the timeframe of the conspiracy (January 1, 1998 and June 10,

2009).   Second, it selected from that subset only those payments made for *injection-related* procedures—the type of procedures the Sharmas admitted comprised a part of their fraud.  The government did this by looking at the billing code for each claim and determining whether the description of the procedure associated with that code fit within the fraud.  Attachment A to the resentencing memorandum includes a list of injection-related procedures with their description and corresponding codes.  By narrowing the restitution in this way, the government made sure to avoid including amounts for procedures that may not have been part of the fraud, which is what led to the errors at the initial sentencing.

Moreover, Arun's challenge to these codes is undermined by the Sharmas' own expert, who acknowledged that she received the codes from the Sharmas' defense counsel and used all of them for purposes of calculating her restitution award.  It is true that her report excludes certain codes that Arun claims should not be included in his restitution award, but these codes represent only $2,351.71 of the award.  And, the Sharmas' expert calculated gross restitution that was about $34,000 *higher* than the government's figure.[13]  We also note that the Sharmas' counsel acknowledged on the record that the gross restitution amount in the government's resentencing memorandum was "correct in the way it was calculated."  He explained that it is based on the claims data already in the record, and correctly excludes "any amounts billed that were outside of the scope of the conspiracy and any amounts that were billed for non-injection-related procedures."   This admission directly contradicts Arun's argument.

---

[13] Because the Sharmas' expert included a few additional procedures that the government chose to exclude, her gross restitution amount was $37,670,826.32, compared to the government's figure of $37,636,436.39.

Given that the Sharmas own expert essentially agreed with the government's calculation of the gross restitution and that their counsel admitted that the amount "is correct in the way it was calculated," we are not persuaded that the district court abused its discretion in its calculation of the restitution award.  In explicitly adopting the government's methodology, the district court satisfied our remand instruction to "specify, on the record, its findings and reasons regarding each insurer's actual loss." *Sharma I*, 703 F.3d at 327.

## V.

For the foregoing reasons, we AFFIRM.

17