United States Court of Appeals
Fifth Circuit

**F I L E D**

February 16, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
for the Fifth Circuit**

No. 04-20616

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CARRIE HAMILTON, RICHARD MILES, and ALICE MILES,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Texas

Before GARWOOD, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:

Defendants-Appellants Carrie Hamilton, Richard Miles, and Alice Miles (the "Appellants") appeal their sentences, arguing the district court erred in calculating their sentences by erroneously relying upon the mandate rule on remand and by violating *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). Finding no reversible error, we AFFIRM.

I.

Four defendants, Carrie Hamilton, Richard Miles, Alice Miles, and Harold Miles, were charged in a 32-count indictment with crimes

related to their involvement in a Medicare fraud scheme, surrounding the creation and management of Affiliated Professional Home Health (APRO). Texas's Department of Health certified APRO as a Medicare provider, and APRO began in-home treatment of Medicare-covered patients and to obtain reimbursement for the home visits to those patients.

The Grand Jury charged the three Defendants who now appeal, Carrie Hamilton ("Hamilton"), Richard Miles, and Alice Miles with: (1) conspiracy to defraud the United States in Medicare program reimbursements, 18 U.S.C. § 371; (2) structuring currency transactions, 31 U.S.C. § 5324; (3) money laundering conspiracy, 18 U.S.C. § 1956(h); (4) three counts of mail fraud, 18 U.S.C. § 1341; (5) heath care fraud, 18 U.S.C. § 1347; (6) six counts of money laundering promotion, 18 U.S.C. § 1956(a)(1)(A)(i); (7) seven counts of money laundering concealment, 18 U.S.C. § 1956 (a)(1)(B)(i); and (8) ten counts of illegal remunerations involving a federal health care program, 42 U.S.C. § 1320a-7b(b)(2)(A).[1]

Appellants were convicted on various counts and were sentenced as follows. Richard Miles was sentenced to 97 months' imprisonment, three years' supervised release, and a $200 special assessment. Alice Miles was sentenced to 168 months' imprisonment,

---

[1]Harold Miles, who is not a party to this appeal, was charged only with three counts of mail fraud, one count of health care fraud, and six counts of money laundering promotion. Harold Miles was acquitted. All four defendants were subject to criminal forfeiture. *See* 18 U.S.C. § 982.

2

three years' supervised release, and a $2100 special assessment. Hamilton was sentenced to 204 months' imprisonment, three years' supervised release, and a $2100 special assessment. Appellants were ordered jointly and severally to make restitution to the United States of $4,292,246.72.

Appellants challenged the convictions and sentences in their first appeal. Reversing in part the convictions, a panel of this Court remanded the case for resentencing. *United States v. Miles*, 360 F.3d 472 (5th Cir. 2004) (reversing the convictions for Hamilton and Alice Miles on money laundering promotion and for ten counts for illegal healthcare kickbacks). Hamilton's and Alice Miles's convictions for conspiracy to commit money laundering and for money laundering concealment were affirmed. *Id*. at 479. Appellants argued in *Miles* that the district court erred in the method of calculating the amount of loss and that the court erred in enhancing their sentences under USSG § 2B1.1(b)(12)(A)(2001) because Medicare is not a financial institution within the meaning of that guideline. Agreeing in part, the panel vacated the sentences and remanded for resentencing, as follows:

> [W]e vacate the sentences of all three appellants and remand for resentencing on the ground that Medicare is not a 'financial institution' within the meaning of U.S.S.G. § 2B1.1(b)(12)(A), in addition to resentencing based on the reversal of the convictions noted above. *On all other grounds, we affirm the rulings of the district court, the jury verdict, and the other bases for the sentences imposed by the district court*.

*Id*. at 483 (emphasis added).

3

On remand, the Probation Office submitted a supplemental and amended Presentence Report (the "Supplemental PSR"), noting the effect of this Court's opinion in *Miles* on both the sentencing ranges and the amount of loss calculation. The Supplemental PSR recommended a total loss figure of $4,266,246.74, a reduction from the original of $26,000 (the amount attributable to the kickback counts).

On June 24, 2004, the Supreme Court issued *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). Appellants filed a supplemental sentencing memorandum, arguing *Blakely* precluded the enhancement of their sentences based upon facts not found by jury.[2] On July 12, 2004, the Fifth Circuit issued *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004) (*Pineiro I*) (rejecting *Blakely*'s application to the federal sentencing guidelines),

---

[2]Hamilton objected to the following enhancements: +18 for total loss; +2 for commission of sophisticated laundering; +4 for being a leader/organizer of criminal activity; and +2 for obstruction of justice.

Alice Miles objected to enhancements of: +18 for total loss; +2 for commission of sophisticated laundering; +2 for 2S1.1(b)(2)(B); +3 for § 3B1.1(b); and +3 for obstruction of justice.

Richard Miles objected to the following level increases: +2 for considerable planning over an extended time period; +3 for his role as a manager/supervisor of criminal activity that involved five or more participants; and +2 for committing perjury during trial.

All three objected to the loss calculation on the grounds that it was (1) determined by subtracting the $26,000 related to the reversed kickback conviction from the district court's original calculation; (2) not alleged in the indictment; and (3) not admitted to by defendants or determined by a jury.

*vacated by*, 543 U.S. 1101 (2005).

Subsequently, the district court resentenced Appellants. At oral argument, Appellants again objected to the enhancements on the basis of *Blakely*. The district court rejected this argument based upon both *Pineiro I* and Appellants' waiver of the objection. The district court stated that Appellants failed to preserve the issue by failing to raise it before this Court on initial appeal. Defense counsel stated that the Sixth Amendment objection had been made at initial sentencing. The district court then ruled that, in addition to *Pineiro I*, the challenge was waived by failure to preserve the issue on appeal and the scope of the issues viable for consideration on remand. *See United States v. Marmolejo*, 139 F.3d 528 (5th Cir. 1998).

Hamilton was resentenced to 171 months' imprisonment, three years' supervised release, and a $1050 special assessment. Richard Miles was resentenced to 63 months' imprisonment, three years' supervised release, and a $200 special assessment. Alice Miles was resentenced to 135 months' imprisonment, three years' supervised release, and a $1050 special assessment. With respect to the amount of loss, the district court reduced the restitution order, in accordance with the probation recommendations, ordering restitution in the amount of $4,266,246.74. Appellants timely appealed again, challenging their sentences, including the calculation of loss amount.

II.

A.

Appellants challenge the district court's calculation of loss amount, arguing that the court reversibly erred by relying upon *Marmolejo*'s mandate rule in declining to revisit the method of the calculation of loss. "Whether the law of the case doctrine foreclosed the district court's exercise of discretion on remand and the interpretation of the scope of this court's remand order present questions of law that this court reviews *de novo*." *United States v. Lee* (*Lee II*), 358 F.3d 315, 320 (5th Cir. 2004) (citing *Sobley v. So. Nat. Gas Co.*, 302 F.3d 325, 332 (5th Cir. 2002)).

B.

Appellants argue, as they did at trial, on initial appeal, and on resentencing, that the court erroneously calculated the amount of restitution by improperly including profits lawfully obtained. This objection is not based upon the Sixth Amendment jury trial right but rather upon the method of calculation. The Government argues that under the law of the case, an issue of law or fact outside the mandate of the remand order "may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal" and that no exception to the mandate rule applies to this record. *See United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998).

The scope of the mandate on remand for resentencing is

limited, precluding a district court's *de novo* consideration of issues at resentencing. *Marmolejo*, 139 F.3d at 528. In *Marmolejo*, we affirmed the district court's exclusion of evidence newly presented on remand for resentencing because the "determination was not before the district court on remand." *Id*. at 530-31. Accordingly, defendants must "raise all relevant and appealable issues at the original sentencing," and a district court resentencing on remand must determine the scope of the mandate by identifying "those issues arising out of the correction of the sentence ordered by this court," not by "allowing a defendant to revisit issues with the benefit of this court's opinion." *Id*. at 531.

> [T]he resentencing court can consider whatever this court directs – no more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below.

*Id*.

Three exceptions to this discretionary, rather than jurisdictional, mandate rule exist. *See Becerra*, 155 F.3d at 752-53. These exceptions are: "(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (*Matthews II*) (citing *Becerra*, 155 F.3d at 752-53).

7

Here, the district court properly concluded that the mandate rule foreclosed any reconsideration of the amount of loss calculation except to adjust as required by *Miles*'s reversal of the money laundering promotion and illegal remuneration convictions. This adjustment was recommended by the Supplemental PSR and adopted by the district court. Appellants' argument that the district court and the panel in *Miles* all failed to properly calculate the loss amount because the calculation included lawfully obtained proceeds was not properly before the district court on remand. The issue was presented to the *Miles* panel, fully briefed and argued, and rejected. The method of calculating the loss amount was not included within the scope of the remand order, given the general language affirming the remainder of the district court's bases for sentencing as well as this Court's rejection of the "various other issues raised by the appellants." *See Miles*, 360 F.3d at 483. Despite Appellants' characterization to the contrary, the mandate in *Miles* expressly affirmed the amount of loss calculation. The *Miles* panel stated, "[o]n all other grounds, we affirm the rulings of the district court, the jury verdict, and the other bases for the sentences imposed by the district court." *Id*. Moreover, *Miles* noted the amount of loss figure in the context of its discussion of Appellants' fraudulent, not lawful, conduct. "The APRO defendants engaged in a wide range of activities that fraudulently overcharged Medicare and netted them a substantial amount of illicit revenue.

8

The appellants were held jointly and severally liable for restitution of over $4 million in overcharges to Medicare." *Id*. at 478. The amount of loss with respect to these overcharges was affirmed by the *Miles* panel, and neither the district court on remand nor this panel may reconsider that law of this case.

Appellants argue that the intervening change in law of *Blakely* and *Booker* precludes application of the mandate rule. The Government argues that at the time Appellants were resentenced by the district court there had been no intervening change in law. The Government argues *Blakely*'s application of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to state sentencing schemes is insufficient to serve as the "controlling authority" required to trigger the intervening authority exception to the mandate rule.

In *Matthews II*, the defendant had argued on initial appeal of his sentence, based on a carjacking and conspiracy conviction, the position that was subsequently adopted in *Apprendi*. 312 F.3d at 656. On remand to the district court, defendant argued that *Apprendi* was an intervening change of law, overruling this Court's prior holding on his initial appeal. *Id*. The district court disagreed and resentenced him according to the government's recommendations. On second appeal, Matthews argued the mandate rule permitted the district court to reconsider the enhancement on one conviction (which, upon reconsideration, the district court had

9

not applied) and prohibited consideration of the enhancement as to another. *Id*. The panel concluded that *Apprendi* was an intervening change in controlling law that "overruled our [initial panel] decision affirming [the] enhancement." *Id*. at 657.

The holding of *Apprendi*, 530 U.S. at 490, forms the basis for both *Blakely*, 124 S. Ct. at 2537, and *Booker*, 125 S. Ct. at 753, 756. As the Government argues, Appellants here did not anticipate this error, as did the defendant in *Matthews I*, nor argue at initial sentencing and on initial appeal that the facts supporting enhancement must be charged in the indictment and proven to a jury as required by the Fifth and Sixth Amendments. *See Matthews II*, 312 F.3d at 657 (quoting *Matthews I*, 178 F.3d at 302). This Circuit's law following *Blakely* and *Booker* also indicates that *Blakely*'s issuance prior to Appellants' resentencing was not an intervening change in law such that an exception to *Marmolejo* should apply. *See United States v. Malveaux*, 411 F.3d 558, 560-61 (5th Cir.), *cert. denied*, 126 S. Ct. 194 (2005); *United States v. Mares*, 402 F.3d 511, 518-59 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005); *see also United States v. Higginbotham*, 137 Fed. Appx. 665 (5th Cir.) (per curiam) (refusing to consider *Booker* error where defendant failed to raise the claim in his initial appeal and raised the challenge for the first time in his petition for certiorari), *cert. denied*, 126 S. Ct. 498 (2005).

Appellants have not shown that an exception applies to the

mandate rule to permit the district court's or this panel's reconsideration of the loss amount. *Blakely*'s issuance between initial appeal of this cause and resentencing on remand is not an intervening change in law sufficient to trigger that exception to the mandate rule. Accordingly, we affirm the Appellants' sentences, including the calculation of restitution, essentially for the reasons provided by the district court.

## III.

### A.

Appellants also argue that the district court erred in sentencing by improperly relying upon facts not found by a jury or admitted, in violation of *Booker*. Citing *Chapman v. California*, 386 U.S. 18, 24 (1967), Appellants argue that harmless error applies to our review of this issue because they preserved their challenge by raising a Sixth Amendment challenge at initial sentencing and that their failure to raise the issue on initial appeal does not eviscerate this preservation. The Government argues that plain error applies because Appellants failed to preserve their challenge grounded in the Sixth Amendment by waiving the issue on first appeal.

Addressing both the mandate rule and preservation, we have previously held that the mandate rule did not foreclose reconsideration of sentencing to allow the application of an upward departure when "the issue was not waived in the prior appeal and .

11

. . arose out of the correction of the sentence of this court [on initial appeal]." *Lee II*, 358 F.3d at 320 n.3, 323-24. Such is not the case here where any objection originally raised grounded on the Sixth Amendment was waived when Appellants abandoned the argument on initial appeal to this Court. *See id.* (citing, amongst others, *United States v. Hass*, 199 F.3d 749, 753 (5th Cir. 1999)). Appellants' argument that to raise *Apprendi* at the time of sentencing or on appeal would have been futile is not availing. *See United States v. Akpan*, 407 F.3d 360, 376 (5th Cir. 2005). We review Appellants' sentences for plain error.

B.

Appellants bear the burden of showing plain error. *See* FED. R. CRIM. P. 52(b); *Mares*, 402 F.3d at 521. The parties agree that the district court plainly erred by increasing Appellants' sentences on the basis of facts other than prior convictions not alleged in the indictment, admitted by Appellants, or proven to a jury beyond a reasonable doubt. It is now clear that the district court's reliance on *Pineiro I* to deny Appellants' challenge to the enhancements and loss amount was error that is plain. *Mares*, 402 F.3d at 520; *see also Booker*, 125 S. Ct. at 738; *Johnson v. United States*, 520 U.S. 461, 468 (1997).

Thus, in order to show reversible error, Appellants must show that the plain error affected their "substantial rights." *See Mares*, 402 F.3d at 520 (citing *United States v. Cotton*, 535 U.S.

12

625, 631 (2002)).  To do so, Appellants must show that the error "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

The transcript of the sentencing hearing indicates that the district court made no suggestion of an inclination to sentence outside the Guidelines or hint of constraint to sentence within them.  There is no statement by the district court judge to indicate what he might have done were the Guidelines not mandatory.  Thus, "[w]e do not know what the trial judge would have done had the Guidelines been advisory." *Mares*, 402 F.3d at 522.  And, on such a record, Appellants cannot show that the district court, sentencing under an advisory scheme, "would have reached a significantly different result."  *Id*.  Appellants cannot demonstrate plain error on this record.

### IV.

For the foregoing reasons, we AFFIRM Appellants' sentences essentially for the reasons provided by the district court and because Appellants cannot demonstrate that the court plainly erred under *Booker*.

**AFFIRMED.**

13