**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRANK CHARLES,<br><br>    Petitioner-Appellant,<br><br> v.<br><br>T. FELKER, Warden,<br><br>    Respondent - Appellee. | No. 09-17373<br><br>D.C. No. 4:06-cv-04568- PJH<br><br>MEMORANDUM[*]<br>and ORDER |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted February 15, 2012
San Francisco, California

Before: GRABER and TALLMAN, Circuit Judges, and TIMLIN, Senior District
Judge.[**]

   Petitioner-appellant Frank Charles appeals the district court's denial of his

claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), raised in his federal habeas

---

   [*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

   [**]  The Honorable Robert J. Timlin, Senior United States District Judge
for the Central District of California, sitting by designation.

corpus petition filed under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we affirm.

We review *de novo* a district court's denial of a habeas corpus petition and review for clear error the district court's factual findings. *Ali v. Hickman*, 584 F.3d 1174, 1181 (9th Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief only if (1) a state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). For AEDPA purposes, we look to the state court's last reasoned decision, which in this case is the California Court of Appeal's opinion affirming Charles' conviction on direct appeal.

*Batson* established a three-step process for evaluating a defendant's objection to a peremptory challenge: "First, the defendant must make a prima facie showing that a challenge was based on race. Second, the prosecution must offer a race-neutral basis for the challenge. Third, the court must determine whether the defendant has shown 'purposeful discrimination.'" *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (en banc) (quoting *Batson*, 476 U.S. at 98).

Here, Charles asserts that the California trial court failed to complete the third step of the *Batson* inquiry, a determination as to the genuineness of the prosecutor's stated reasons for his peremptory challenges of five African-American jurors. The trial court initially found that Charles had stated a prima facie case and required the prosecutor to give reasons for each strike. The prosecutor provided detailed explanations as to each juror, and the trial court asked a number of questions and made a number of comments throughout the explanations. These comments show that the trial court was receptive to the prosecutor's justifications and found the prosecutor to be credible. The trial court then thanked the prosecutor for his thoroughness and denied Charles' *Batson/Wheeler* motion, stating that "the court finds that you have listed a nonrace-based reason for the exclusion of each one of these 95 [sic] jurors."

Charles contends that, because of the verb "listed," this ruling did not explicitly reach the third step of the *Batson* analysis and therefore does not satisfy the requirement under *Batson* that the trial court "undertake a sensitive inquiry" to determine whether the stated race-neutral reasons are genuine or simply pretexts for discrimination. *Batson*, 476 U.S. at 93, 95 (internal quotation marks omitted). We disagree and hold that the state appellate court reasonably construed the trial

3

court's ruling as an implicit finding that the prosecutor was credible and his stated reasons genuine.

Charles also contends that the state appellate court erred in refusing to engage in a comparative juror analysis under the third step of *Batson* to determine the genuineness of the stated reasons for those peremptory challenges. The Supreme Court made clear in *Miller-El v. Dretke*, 545 U.S. 231 (2005) (*"Miller-El II"*) that "comparative juror analysis [is] a centerpiece of the *Batson* analysis," even when conducted for the first time at the appellate level. *Boyd v. Newland*, 467 F.3d 1139, 1150 (9th Cir. 2006). Therefore, a state appellate court's failure to consider comparative evidence concerning the characteristics of jurors the prosecutor did not challenge at trial is error. In light of that error, we have conducted a comparative juror analysis *de novo*, rather than remanding for the state courts to do so. *See Green v. LaMarque*, 532 F.3d 1028, 1031 (9th Cir. 2008).

To conduct the comparative juror analysis, we grant Charles' request that the panel take judicial notice of the juror questionnaires used in voir dire, so as to consider the information contained therein for a similarity comparison between the prospective jurors who were struck with the other prospective jurors who were not. The juror questionnaires were not in the record before the district court, despite its

4

August 8, 2006 order directing the Attorney General of the State of California to file and serve on petitioner "a copy of all portions of the state trial record that have been transcribed previously and that are relevant to a determination of the issues presented by the petition." They also were not considered by the California appellate court, on direct appeal, because it declined to conduct a comparative juror analysis. In the responding brief, the state noted that it "does not oppose [the] request in the abstract," but objected to consideration of the questionnaires as precluded by *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). We hold that these questionnaires are not new evidence to be considered by the federal court as would be precluded by *Pinholster*, because they were before the state trial court. *See id.* at 1398 ("[T]he record under review is limited to the record in existence at the same time, *i.e.*, the record before the state court."); *see Miller-El II*, 545 U.S. at 241 n.2. While we rarely take judicial notice of facts presented for the first time on appeal, these questionnaires are highly relevant to the comparative juror analysis that we are required to conduct *de novo*.

Upon a review of the entire record, including the juror questionnaires, we find that none of the peremptorily challenged African-American jurors was similarly situated to the seated white jurors, when the prosecutor's reasons are carefully examined. *See Miller-El II*, 545 U.S. at 241; *Cook v. LaMarque*, 593

5

F.3d 810, 815 (9th Cir. 2010). Further, the justifications given by the prosecutor for each excused African-American juror were sound and not motivated by discriminatory intent. Finally, cumulative evidence corroborates the genuineness of the prosecutor's reasoning: the jury as empaneled contained two African-American women as jurors, and one African-American man served as an alternate juror. Therefore, the state court's conclusion that valid, non-pretextual grounds, and not race, motivated the five peremptory strikes of certain African-American jurors was not objectively unreasonable.

**AFFIRMED.**