**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2013

No. 11-30641

Lyle W. Cayce
Clerk

SHAWN HIGGINS,

Petitioner - Appellant

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The district court granted Shawn Higgins a certificate of appealability ("COA") regarding his claim that his appellate counsel was ineffective in not raising three *Batson*-related arguments on direct appeal. Persuaded that the state court did not unreasonably apply clearly established federal law in rejecting that claim, we affirm the district court's judgment denying habeas relief.

## I. BACKGROUND AND PROCEDURAL HISTORY

Higgins was convicted of the second degree murder of Carl Jackson and sentenced to life in prison without parole. His conviction was affirmed on direct appeal. Higgins then sought and was denied post-conviction relief in state court.

In addition to numerous other post-conviction claims, Higgins raised an ineffective assistance of appellate counsel claim.[1] He argued that his appellate counsel was ineffective because he neither requested nor obtained a transcript of the voir dire proceedings, despite minute entries from that date indicating that trial counsel made two *Batson* objections, both of which were denied. The state court denied Higgins's request for post-conviction relief on that claim without a hearing or a copy of the voir dire transcript. Higgins, through counsel, then filed his 28 U.S.C. § 2254 application in federal court. In addition to numerous other arguments, Higgins asserted that the state court's rejection of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of clearly established federal law. The magistrate judge recommended that the writ be granted on Higgins's claim of ineffective assistance of appellate counsel. The district court rejected that recommendation but granted Higgins a COA on the following question: "Whether the state court unreasonably applied clearly established federal law when it determined that petitioner's appellate counsel did not render ineffective assistance when he failed to raise issues with respect to *Batson* on direct appeal." Higgins timely appealed and then moved to expand the COA to include the issues of (1) whether the state court's ruling on his claim of ineffective assistance of appellate counsel was a ruling on the merits and (2) whether under a *de novo* standard of review he received ineffective assistance of appellate counsel. The district court and this Court denied the motion. Accordingly, the only issue presently before us is that presented in Higgins's original COA.

## II.  STANDARD OF REVIEW

This habeas proceeding is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and we have jurisdiction because, as

---

[1] *See Strickland v. Washington*, 466 U.S. 668 (1984).

stated above, the district court granted Higgins a COA.[2]  In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*.[3]  Under AEDPA, we may not grant habeas relief on a claim that the state courts have adjudicated on the merits unless that adjudication resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."[5]  A state court's decision involves an "unreasonable application of clearly established federal law" if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."[6]  The state court's factual findings are "presumed to be correct" unless the habeas petitioner rebuts the presumption "by clear and convincing evidence."[7]

## III.  DISCUSSION

To make out a claim for ineffective assistance of appellate counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that

---

[2] 28 U.S.C. § 2253(c)(1).

[3] *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001).

[4] 28 U.S.C. § 2254(d).

[5] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

[6] *Id.*

[7] 28 U.S.C. § 2254(e)(1).

the deficient performance prejudiced the defense."[8]  The state post-conviction court rejected Higgins's ineffective assistance of appellate counsel claim, leaving uncertain whether its rejection rested on *Strickland v. Washington*'s deficiency prong or its prejudice prong.  But that issue is of no moment given the Supreme Court's recent decision in *Johnson v. Williams*.[9]  Under *Williams*, when a state court rejects some of the defendant's claims but does not expressly address a particular federal claim, a federal habeas court reviewing under § 2254(d) must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  There being no rebuttal here, we assume that the state court adjudicated both the deficiency and prejudice prongs on the merits.

In considering whether the state court's decision constituted an unreasonable application of clearly established federal law, "a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision."[10]  Thus, the focus of the "unreasonable application" inquiry is "on the ultimate legal conclusion that the state court reached," and "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[11]  In conducting that inquiry, "a habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme

---

[8] *Strickland*, 466 U.S. at 687.  The *Strickland* standard is used to evaluate claims for ineffective assistance of appellate counsel.  *Blanton v. Quarterman*, 543 F.3d 230, 240 (5th Cir. 2008).

[9] 548 U.S. ___, 133 S. Ct. 1088 (2013).

[10] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

[11] *Id.*

Court]."[12]   Here, because we are persuaded that "there [was] a reasonable justification for the state court's decision,"[13] we must deny relief.

## A.

Higgins first contends that his appellate counsel was ineffective because he failed to obtain a copy of the voir dire transcript, which would have revealed three *Batson*-related issues, despite minute entries indicating that defense counsel made two *Batson* objections during voir dire, both of which were denied.[14] This failure-to-investigate argument fails because Higgins has not met his burden of demonstrating prejudice.   To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[15]   That standard is not met here because, as we explain below, even had Higgins's appellate counsel investigated the *Batson* objections, Higgins cannot show that such investigation would have led to solid, meritorious arguments based on directly controlling precedent which his counsel should have brought to the appellate court's attention.  Moreover, Higgins offered no evidence that his appellate counsel had failed to investigate the *Batson* objections in some other way.  For example, we do not know whether appellate counsel contacted

---

[12] *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

[13] *Id.* at 790.

[14] One could argue that Higgins's failure to investigate argument is not within the scope of the COA, but we find that the argument is properly before us as a part of his claim that counsel was ineffective on direct appeal in failing to present the *Batson* issues.  The want of a transcript has no moment absent a *Batson* violation.

[15] *Strickland*, 466 U.S. at 694.  In articulating *Strickland*'s prejudice standard, the state post-conviction court omitted the "reasonable probability" modifier on two occasions. Assuming *arguendo* that omission of the "reasonable probability" language results in a decision that is "contrary to" Supreme Court precedent, and therefore not entitled to AEDPA deference, Higgins still would not be entitled to relief because even under *de novo* review he has failed to demonstrate prejudice.

trial counsel, inquired about the *Batson* objections, decided those arguments would not succeed on direct appeal, and thus did not request the transcript. For all these reasons, Higgins failed to show that the state habeas court was unreasonable in rejecting his failure-to-investigate argument.

### B.

We now turn to Higgins's second group of arguments—that appellate counsel was ineffective because he failed to raise three specific *Batson*-related arguments on direct appeal. We can meaningfully address those arguments only by considering the voir dire transcript, which was not part of the record before the state post-conviction court, notwithstanding the diligent efforts of Higgins's attorney in that proceeding. As a threshold matter, we must decide whether *Cullen v. Pinholster*[16] precludes consideration of the voir dire transcript. *Pinholster* teaches that "evidence introduced in federal court has no bearing on § 2254(d)(1) review."[17] "It would be contrary to th[e] purpose [of the federal habeas scheme] to allow a petitioner to overcome an adverse state-court decision with *new evidence* introduced in a federal habeas court and reviewed by that court *in the first instance* . . . ."[18]

Despite that categorical holding, by which we are bound, we conclude that consideration of the voir dire transcript is not barred by *Pinholster*, because the transcript is not "new evidence" introduced in federal court "in the first instance."[19] In reaching that result, we follow a recent case from a sister circuit addressing a similar *Batson* claim. In *Jamerson v. Runnels*,[20] the Ninth Circuit

---

[16] 131 S. Ct. 1388, 1398 (2011).

[17] *Id.* at 1400.

[18] *Id.* at 1399 (emphasis added).

[19] *See id.*

[20] 713 F.3d 1218, 1227 (9th Cir. 2013).

considered "enlarged driver's license photographs that Jamerson submitted to show the race of each venire member," even though "the state appellate court, which issued the last reasoned opinion in this case, did not know the race of every venire member." The Ninth Circuit explained,

> *Pinholster's* concerns are not implicated here. The driver's license photographs depicting the racial composition of Jamerson's jury venire do not constitute new evidence of which the state courts were completely unaware when deciding his *Batson*[] claims. Instead, these photographs reconstruct physical attributes that were visible to the state court that originally ruled on Jamerson's *Batson*[] motions.[21]

Similarly, the voir dire transcript reconstructs testimony actually presented to the state court that originally ruled on Higgins's *Batson* motion and "represent[s] a part of the set of facts that the state court evaluated when concluding that the prosecutor had genuine, race-neutral reasons for striking each juror."[22]

"A common sense reading of *Pinholster* leads us to this conclusion."[23] In our view, the gravamen of that decision is effecting "AEDPA's goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review [a] claim, and to correct any constitutional violation in the first instance."[24] Most significantly, "nothing in *Pinholster* inherently limits this court's review to evidence that the state appellate court—as opposed to the state

---

[21] *Id.* at 1226.

[22] *Id.* at 1226-27.

[23] *Id.* at 1226.

[24] *Pinholster*, 131 S. Ct. at 1401 (internal quotation marks omitted) (alteration in original).

trial court—considered. . . . To the contrary, *Pinholster* itself precluded review only of evidence that was never revealed in any state court proceeding."[25]

Finally, we join the *Jamerson* court in declining to read *Pinholster* "as implicitly overruling the substantive *Batson* requirements set forth in *Miller–El* [*v. Dretke*[26]]."[27]  If *Pinholster* bars consideration of the voir dire transcript, "examination of the state court's disposition of [Higgins's] *Batson* claim . . . will be virtually impossible."[28]  "We do not believe that the Supreme Court had this consequence in mind when it decided *Pinholster*."[29]  Therefore, *Pinholster* allows us to consider the voir dire transcript to the extent that it "merely reconstruct[s] facts [known] to the state trial court that ruled on the petitioner's *Batson* challenge."[30]

To understand the specifics of Higgins's arguments, we begin with a brief review of *Batson v. Kentucky* and the voir dire proceedings in Higgins's case.  In *Batson*, the Supreme Court explained that "[a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against

---

[25] *Jamerson*, 713 F.3d at 1227 (citation omitted).  *See also Charles v. Felker*, 473 F. App'x 541, 544 (9th Cir.), *cert. denied*, 133 S. Ct. 424 (2012) (taking judicial notice of juror questionnaires used in voir dire and holding that the "questionnaires are not new evidence to be considered by the federal court as would be precluded by *Pinholster*, because they were before the state trial court").

[26] 545 U.S. 231, 241 (2004).

[27] *Jamerson*, 713 F.3d at 1227.

[28] *Id.*

[29] *Id.*

[30] *Id.*

a black defendant."[31]  *Batson* established a three-step process for examining whether a prosecutor has exercised peremptory challenges in a manner that violates the Equal Protection Clause.  A defendant must first make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race.[32]  If the prima facie showing is made, then "the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question."[33]  The trial court must then "determine whether the defendant has carried his burden of proving purposeful discrimination."[34]

With that legal framework in mind, we turn to the specifics of the voir dire proceedings in Higgins's case.  The first venire panel included five African American and eight white potential jurors.  The State used peremptory strikes to remove one white juror and three African American jurors.  The State also successfully challenged one African American juror for cause, and the remaining African American juror was accepted onto the jury.  At that point, defense counsel made a *Batson* objection, to which the trial court responded: "The Court doesn't find any pattern at this point with regard to any *Batson* problems.  There are, as you stated, there are some African American jurors on the panel as your client's African American.  The State has chosen to keep [one juror], who is African American.  The State has also cut a white prospective juror."  The State then used peremptory strikes to remove one African American juror in the second panel and one African American juror in the third panel.  Following the latter strike, defense counsel re-urged his *Batson* objection.  Before the trial judge had an opportunity to rule on whether Higgins's counsel had now made out a *prima facie* case of discrimination, the prosecutor immediately proffered

---

[31] *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).

[32] *Hernandez v. New York*, 500 U.S. 352, 358 (1991) (citing *Batson*, 476 U.S. at 96–97).

[33] *Id.* at 358–59 (citing *Batson*, 476 U.S. at 97–98).

[34] *Id.* at 359 (citing *Batson*, 476 U.S. at 98).

race-neutral explanations for the later two strikes. Following each of the prosecutor's explanations, the trial judge responded that the prosecutor had "articulated race neutral reasons" for the given peremptory challenge. The prosecutor did not offer an explanation for striking the three prospective African American jurors in the first panel. Following defense counsel's second *Batson* objection, one potential African American juror remained in the second panel; the State did not challenge that potential juror, but defense counsel used a back strike to remove her. The case thus went to trial with one African American juror.

In light of the foregoing, Higgins argues that his appellate counsel was deficient for failing to make three *Batson*-related arguments on direct appeal—specifically that the trial court erred (1) by failing to find a *prima facie* case with respect to the three African American jurors who were struck in the first round at the time defense counsel made its initial *Batson* objection; (2) by failing to find a *prima facie* case with respect to the three African American jurors who were struck in the first round once the prosecutor offered race-neutral explanations for the two later strikes; and (3) by failing to engage in the third step of *Batson* inquiry, which requires the trial court to evaluate whether the State's proffered race-neutral explanations were sufficiently persuasive to overcome a *Batson* challenge.

To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[35] We "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct" to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[36] Our scrutiny

---

[35] *Strickland*, 466 U.S. at 688.

[36] *Id.* at 690.

10

of counsel's performance must be "highly deferential," and, in order to avoid the effects of hindsight bias, we "must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be sound trial strategy.'"[37]  Applying AEDPA deference to *Strickland*'s already deferential standard, we must deny relief if "there is any reasonable argument that [appellate] counsel satisfied *Strickland*'s deferential standard" despite failing to make the argument described above.[38]  In other words, we must deny relief "if there was a reasonable justification for the state court's decision."[39]

We find such a reasonable justification exists—given the weaknesses in those arguments, it is at least arguable that a competent attorney could decide to forgo raising them.[40]  Under well-established principles, appellate counsel need not "raise every nonfrivolous ground of appeal available" in order to be effective.[41]  Instead, appellate counsel's failure to raise an argument on direct appeal will be considered ineffective only when counsel fails to perform "in a reasonably effective manner."[42]  This standard requires that appellate counsel

---

[37] *Id.* at 689.

[38] *Richter*, 131 S. Ct. at 788.

[39] *Id.* at 790.

[40] *See id.* at 788 ("*Strickland* . . . permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'  It was at least arguable that a reasonable attorney could decide to forgo inquiry into the blood evidence in the circumstances here." (quoting *Strickland*, 466 U.S. at 691)).

[41] *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998); *see Jones v. Barnes*, 463 U.S. 746, 751–53 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . .  A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions.").

[42] *Green*, 160 F.3d at 1043.

"research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."[43]  "Solid, meritorious arguments based on directly controlling precedent should be brought to the court's attention."[44] Thus, to determine whether appellate counsel's performance was deficient, we must consider whether the *Batson* arguments are "sufficiently meritorious such that [Higgins's] counsel should have raised [them] on appeal."[45]  We find that they are not.  As such, "[h]ere it would be well within the bounds of a reasonable judicial determination for the state court to conclude that [appellate] counsel could follow a strategy that did not require" raising the *Batson* arguments on direct appeal.[46]

### 1.

Higgins first alleges that his appellate counsel was deficient because he did not argue that the trial court erred by failing to find a *prima facie* case at the time defense counsel lodged its initial *Batson* objection.  To establish a *prima facie* case under *Batson*, "a defendant (1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of the group from the venire; (2) is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and (3) must show that these facts and circumstances raise an inference that the prosecutor exercised peremptory challenges on the basis of race."[47]  Here, the third

---

[43] *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).

[44] *Id.*

[45] *Id.*; *see United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004).

[46] *Richter*, 131 S. Ct. at 789.

[47] *Price v. Cain*, 560 F.3d 284, 286 (5th Cir. 2009) (citing *Batson*, 476 U.S. at 96) (internal quotations omitted).

requirement is at issue. Although demonstrating facts sufficient to raise an inference of discrimination is a "light burden," the question before us is not whether we would find a *prima facie* case on *de novo* review. Instead, we are faced with evaluating the state court's adjudication of Higgins's ineffective assistance of appellate counsel claim—based on counsel's failure to raise the above argument—under the heightened deference AEDPA requires. In turn, we must ask whether there is a reasonable justification for the state court's decision that appellate counsel's failure to raise the argument on direct appeal did not amount to deficient performance.

We are persuaded that such a justification exists here. For one, in light of the deferential standard a Louisiana appellate court would employ in reviewing the trial judge's determination that no *prima facie* case existed, it is at least arguable that a competent attorney could decide to forgo raising the argument on appeal. The Louisiana Supreme Court has previously explained that when reviewing a trial court's finding that the defendant failed to carry its burden of establishing a *prima facie* case, "the appropriate inquiry . . . is whether the district court committed clear error in finding the defendant failed to make a prima facie showing of discriminatory intent in the State's exercise of its peremptory challenges."[48] Moreover, under *Batson*, proof of a *prima facie* case is fact-intensive, and "[i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances."[49] Here, at the time defense counsel raised its initial *Batson* objection, the State had used peremptory challenges to strike three potential African American jurors, but it had also exercised a peremptory challenge to exclude one potential white juror; one African American juror remained on the panel. In addition, the voir dire responses of two of the three African American jurors stricken by the

---

[48] *State v. Allen*, 913 So.2d 788, 802 (La. 2005).

[49] *Batson*, 476 U.S. at 96.

13

State "made them entirely predictable targets of state peremptory challenges for specific, objective, and trial-related reasons other than race."[50]  One explained that he teaches fourth grade during the day and attends school at night.  The other said he would have difficulty finding child care and appeared to the prosecutor to have been falling asleep during voir dire.  Both explanations gave the State reason to believe that the potential jurors in question would be tired or distracted during the trial.  Finally, under Louisiana precedent, "the trial judge could take into consideration the tenor of the voir dire questioning"—specifically the fact that "[t]he prosecution used the same questions throughout its voir dire" and the fact that "[t]here is no indication that any particular prospective jurors were 'targeted' for more questioning in an attempt to provoke a certain response."[51]  Given those facts, the context-specific nature of the *prima facie* case determination, and the deferential standard employed on direct review, it is at least arguable that a competent attorney could have elected not to pursue the first *Batson* argument on appeal.

**2.**

Higgins next contends that his appellate counsel was deficient because he did not argue that once the prosecutor offered race-neutral explanations for the two later peremptory strikes, that voluntary explanation mooted the *prima facie* case issue for all jurors subject to *Batson* objections, and in turn the trial judge should have proceeded directly to step two of *Batson* with respect to the earlier challenges.  It is true, as Higgins explains, that generally when a prosecutor voluntarily offers a race-neutral explanation for a peremptory strike, "the question of Defendant's prima facie case is rendered moot and our review is

---

[50] *State v. Jacobs*, 803 So.2d 933, 959 (La. 2001).

[51] *State v. Draughn*, 950 So.2d 583, 604 (La. 2007).

14

limited to the second and third steps of the *Batson* analysis."[52]  However, this case presents a twist on that familiar principle because the prosecutor here offered race-neutral explanations for striking two African American jurors different from the three subject to the initial *Batson* objection.  At least two other circuits have found that there is no authority directly addressing whether a trial court must *sua sponte* revisit prior *Batson* objections when it finds a *prima facie* case with respect to a juror struck after that initial objection.  In *Williams v. Haviland*, the petitioner claimed "that the state trial court erred in refusing to reconsider its denial of his first *Batson* challenge given that the court subsequently found a prima facie case of discrimination with regard to the second struck juror."[53]  The Ninth Circuit found that "[the petitioner's] procedural claim regarding sequential *Batson* challenges has not been squarely addressed by the United States Supreme Court, so we must defer to the state court's resolution of the issue."[54]  Similarly, in *United States v. Bernal-Benitez*, the Eleventh Circuit explained that it was "unable to locate precedent" indicating "that before ruling on a *Batson* objection based on race, a trial court has a duty *sua sponte* to reconsider any ruling it previously may have made on a *Batson* objection based on the same race."[55]  Given the want of authority directly addressing the issue of whether a trial judge faced with multiple *Batson* challenges is required to re-visit earlier *Batson* challenges, there is a reasonable argument that Higgins's appellate counsel satisfied *Strickland*'s deferential standard, even though he did not raise the argument on appeal.  It was not unreasonable for the state court to conclude, in light of the absence of precedent supporting the potential *Batson* argument, that Higgins had failed to "overcome

---

[52] *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001).

[53] 394 Fed. Appx. 397, 398 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 929 (2011).

[54] *Id.*

[55] 594 F.3d 1303, 1312–13 (11th Cir. 2010), *cert. denied*, 130 S. Ct. 2123 (2010).

the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[56]

### 3.

Finally, Higgins argues that his appellate counsel was deficient because he failed to argue that the trial judge erred by not engaging in the third step of the *Batson* analysis. *Batson*'s third step requires that after a prosecutor articulates a race-neutral explanation for striking the jurors in question, "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination."[57] During voir dire in Higgins's case, the prosecutor offered race-neutral explanations regarding his use of peremptory strikes against two African American jurors: one based on the juror's potential familiarity with the defendant and his family and one based purely on the juror's demeanor. Higgins argues that the trial court failed to assess the validity of these explanations as required by *Batson*'s third step and that his appellate counsel was ineffective for not raising that argument on direct appeal. But that is not the question before us. We may grant habeas relief only if there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard even though he failed to assert the argument on appeal. We find such an argument exists here. After each of the two race-neutral explanations were given, the trial judge stated that "the State has articulated race neutral reasons" for challenging the particular juror. One could argue that the trial judge did in fact reach *Batson*'s third step by interpreting his finding to mean that he had implicitly considered the record before him and credited the prosecutor's race-neutral reasons. That argument is bolstered by the presence of a circuit split regarding whether a trial judge must make explicit findings of fact at *Batson*'s

---

[56] *Strickland*, 466 U.S. at 689.

[57] *Hernandez*, 500 U.S. at 359 (citing *Batson*, 476 U.S. at 98).

third step.[58] It is worth noting that since Higgins's direct appeal the Louisiana Supreme Court has held that a trial judge is not required to make explicit findings in completing the *Batson* step three analysis.[59] In light of the weaknesses in Higgins's proffered *Batson* argument, the state habeas court could have reasonably concluded that appellate counsel was not deficient in failing to raise the third step *Batson* argument on direct appeal.

## IV.  CONCLUSION

For the reasons set forth above, we AFFIRM the district court's judgment denying habeas relief.

---

[58] *See, e.g., Coombs v. Diguglielmo*, 616 F.3d 255, 261 (3d Cir. 2010); *Smulls v. Roper*, 535 F.3d 853, 860 (8th Cir. 2008).

[59] *State v. Sparks*, 68 So.3d 435, 474–75 (La. 2011).