# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40229

United States Court of Appeals
Fifth Circuit

**FILED**
January 26, 2021

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JAMES BAYLOUS WHITE,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-166

ON PETITION FOR REHEARING

Before DENNIS, SOUTHWICK, and HO, Circuit Judges.

PER CURIAM:*

The prior opinion is withdrawn.

A federal inmate filed a motion for relief from his conviction based on ineffective assistance of counsel. The inmate's newest argument focuses on his counsel's failure to advise him about the availability of the option of an open plea. The district court denied relief. On rehearing, a valid question about the analysis of the mandate rule is raised. We revise and again AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40229

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2010, a federal grand jury in the Eastern District of Texas, Sherman Division, indicted James Baylous White on two counts of conspiracy to manufacture, distribute, or possess with intent to manufacture or distribute methamphetamine and pseudoephedrine. The Government offered a plea agreement through which White would plead guilty to Count One concerning methamphetamine and stipulate that he "was an organizer, leader, manager or supervisor," making United States Sentencing Guidelines Section 3B1.1(b) applicable.[1] In return, the Government would dismiss Count Two and agree that a three-level reduction for acceptance of responsibility would apply. White did not accept the offer, and the case proceeded to trial on both counts.

At trial, the Government called White's girlfriend, Bertha Mae Russell, as a witness. Russell had pled guilty to an offense and agreed to cooperate with the Government by testifying against White. Apparently, the testimony was unexpected and sufficiently compelling that White decided to change his plea. White pled guilty to Count Two of the indictment without the benefit of a written plea agreement, an option known as an open plea. In response, the Government dismissed Count One.

At the sentencing hearing, White objected to the Presentence Report ("PSR"). White first objected to a two-level enhancement under Guidelines Section 2D1.11(b)(1) for possession of a dangerous weapon, and the district court overruled the objection. White also objected to a three-level enhancement under Section 3B1.1(b) for his supervisory role in the offense, and the district court again overruled the objection. The district court also concluded White

---

[1] To be clear, the Presentence Report listed Sentencing Guideline Section 3B1.1(c). That provision, however, was cited in error, and the transcript of the sentencing hearing clarifies that Section 3B1.1(b) provides for the three-level enhancement and that the citation to subsection (c) was erroneous. The parties at the evidentiary hearing appear to carry this incorrect reference to Section 3B1.1(c).

2

No. 19-40229

was not eligible for a reduction for acceptance of responsibility because he did not enter his guilty plea until after his jury trial had begun.

The district court imposed a 240-month term of imprisonment followed by 3 years of supervised release. White's direct appeal was unsuccessful. *See United States v. White*, 495 F. App'x 549, 552 (5th Cir. 2012).

White filed for post-conviction relief, claiming that his trial counsel, Phillip Linder, provided ineffective assistance. *See* 28 U.S.C. § 2255. Relevant to this appeal is White's claim that he rejected the plea offer based on Linder's inaccurate advice during plea negotiations that a three-level enhancement could not be applied to him under the law and that White had to go to trial to challenge any sentencing enhancement. White also asserted that Linder had not informed White that he could lose credit for acceptance of responsibility if White went to trial. White contended that he would have accepted the plea offer but for the alleged incorrect advice.

The district court denied the Section 2255 motion. This court granted a certificate of appealability ("COA") on two of White's claims: whether Linder's inaccurate advice caused White to reject the plea offer, and relatedly, whether the district court abused its discretion by denying relief on this claim without holding an evidentiary hearing. Later, we vacated the district court's judgment in part and remanded to the district court for further proceedings on the ineffective-assistance claim. *See United States v. White*, 715 F. App'x 436, 438 (5th Cir. 2018).

A magistrate judge conducted an evidentiary hearing on remand. Linder testified that after he negotiated a plea offer and then reviewed the offer with his client, White "was adamant about wanting to go to trial." White did not believe that his girlfriend, Russell, would testify against him, and based on that belief, White did not think that the Government could establish his guilt.

3

Linder denied that he had told White that a leadership-role enhancement could not be applied. Linder also denied that he had told White that it was necessary to go to trial to challenge the role enhancement. Linder testified that he explained to White that sentencing enhancements could be challenged in objections to the PSR, but White did not want to plead guilty and admit that a role enhancement should be applied. Linder also advised White that he would lose credit for acceptance of responsibility if White went to trial.

During Linder's testimony, White's counsel introduced a letter White had written to the Government's attorney. In the letter, White stated he was willing to plead guilty if the Government would "drop the leadership role and the gun enhancement" and provide its assurance that these enhancements "will not be used by the probation officer." Linder testified that the Government provided him with a copy of the letter during his representation of White, but Linder knew that the Government would not agree to abandon the role enhancement and that the Government would argue at sentencing that the gun enhancement applied.

White testified that Linder never told him he would not receive credit for acceptance of responsibility if he went to trial; in fact, Linder never discussed acceptance of responsibility with him at all. If Linder had done so, White would have accepted the plea offer even though he did not want to stipulate to the role enhancement. White testified he went to trial solely to challenge the role enhancement, believing it was the only way to make that challenge, and White decided to plead guilty after Russell gave testimony that supported the role enhancement. White further testified that Linder did not explain the differences between what would happen if White did or did not plead guilty. White claimed that he was never presented the option of entering an open plea *before* trial began.

No. 19-40229

The magistrate judge issued a report finding that (1) White would not have accepted the plea offer, "regardless of what he was told about the plea agreement"; (2) White wanted to go to trial and did not believe Russell would testify against him; (3) White had failed to show deficient performance on the part of Linder; and (4) Linder reviewed the terms of the plea agreement with White, but White was not interested in the details of the agreement, as he had already decided to reject the plea offer. The magistrate judge recommended that the Section 2255 motion be denied.

Over White's objections, the district court adopted the report and recommendation. The court dismissed the Section 2255 motion but granted a COA "with respect to the claim that counsel's deficient performance caused [White] to reject the Government's pre-trial plea offer." White timely appealed.

## DISCUSSION

White was represented by counsel in the Section 2255 proceedings in district court but filed a *pro se* notice of appeal and appellate brief. He contends the district court erred by denying him relief for these defects in his counsel's assistance: (1) failing to advise him that he would not receive credit for acceptance of responsibility if he went to trial; (2) erroneously advising him that he had to go to trial to challenge the role enhancement; and (3) failing to advise him of the possibility of entering an open plea. We consider the first two arguments together because they are within the scope of the COA. White's third argument will be treated separately because of a threshold issue of whether the COA allows us to resolve it.

I.    *Whether trial counsel's deficient performance caused White to reject the Government's plea offer*

On appeal from a district court's grant or denial of a Section 2255 motion, we review that court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008). Claims of ineffective assistance of counsel are mixed questions of law and fact, reviewed *de novo*. *United States v. Phea*, 953 F.3d 838, 841 (5th Cir. 2020). Credibility determinations are factual findings, which are not clearly erroneous so long as the findings are plausible in light of the record as a whole. *United States v. Montes*, 602 F.3d 381, 384 (5th Cir. 2010).

An attorney renders constitutionally ineffective assistance if his performance falls below an objective standard of reasonableness; that deficient performance also must prejudice the client. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). For prejudice, White "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. When a defendant like White contends that counsel's deficient performance caused the defendant to reject a plea offer, the *Strickland* prejudice inquiry requires the defendant to show that: (1) but for counsel's ineffective advice, there is a reasonable probability that the defendant would have accepted the plea; (2) the court would have accepted its terms; and (3) under the plea, the sentence would have been less severe than the one imposed. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

White argues that the evidence shows that he would have been willing to accept the Government's plea offer if Linder had properly advised him. At the evidentiary hearing on White's claim for ineffective assistance of counsel,

White testified that Linder failed to advise him that by going to trial, White would not receive credit for acceptance of responsibility. Linder testified to the contrary. The district court found Linder's testimony more credible and determined that Linder indeed reviewed with White "the risk of losing credit for acceptance of responsibility by going to trial." Because this factual finding is plausible in light of the record as a whole, it is not clearly erroneous. *See Montes*, 602 F.3d at 384. White has therefore failed to show that Linder performed deficiently by failing to advise him that he would lose the credit for acceptance of responsibility by going to trial.

White next argues that Linder erroneously advised that the only choices were to accept the plea offer or, if White wanted to challenge the role enhancement, go to trial. According to White, the record shows that he would have accepted a plea deal had he been properly advised. The district court did not address the factual question of what choices were described by White's counsel. The court did determine, though, that White "was not going to accept the plea offer, regardless of what he was told about the plea agreement." In view of the testimony that Linder informed White about the plea agreement but that White was adamant about going to trial in part because he did not believe Russell would testify against him, the district court's factual determination is plausible and not clearly erroneous. *See id.* White thus fails to establish prejudice because he has not shown that, but for Linder's deficient advice, there is a reasonable probability that White would have accepted the plea offer.

II.  *Whether White's trial counsel was ineffective for failing to advise White of the possibility of entering an open plea*

White's third argument of ineffective assistance of counsel is that Linder failed to advise him of the possibility of entering an open plea, *i.e.*, a plea without any agreement with the government as to a recommended sentence.

As a preliminary consideration, we must determine whether this argument is within the scope of the COA granted by the district court. This court determined that this issue would benefit from assistance of *pro bono* counsel. Attorney Paulette C. Miniter agreed to serve in that capacity. We thank her for her able assistance to her client and this court. Her supplemental brief addressed "whether the claim that trial counsel was deficient in failing to advise Appellant of his right to enter an open plea falls within the grant of the [COA], and, if so, the merits of this claim." The Government submitted a response.

### A.     *Claims covered by the certificate of appealability*

We will not consider claims that exceed the scope of issues on which a COA is granted. *United States v. Kimler*, 150 F.3d 429, 430–31 (5th Cir. 1998). If a party expressly seeks a COA on additional issues, which White has not done, this court may certify those issues if the party meets the requirements for a COA. *See id.* at 431. Thus, we first consider whether the open-plea claim is within the scope of the COA granted by the district court.

We begin with a review of the procedural history of White's Section 2255 motion. In the motion, White alleged Linder told him that "the only way to challenge any enhancement at sentencing is" to go to trial, and Linder "did not inform [him] that he could lose the 'acceptance of responsibility' credit" if he went to trial. White claimed that "[b]ut for [Linder's] incorrect advice, [he] would have accepted the plea offer made by the Government." White did not explicitly reference in the motion the now-raised open-plea argument.

On March 31, 2016, the district court denied the motion. In this court's order of May 30, 2017, we summarized White's argument, then stated that "a COA is GRANTED on this ineffective assistance claim, as well as on the related issue" of whether to have an evidentiary hearing. We wrote that the claim

concerns the advice provided by counsel in connection with a proposed pretrial plea bargain, which, among other provisions, called for him to receive an enhancement for his role in the offense and for him to receive credit for acceptance of responsibility. White asserts that he was erroneously advised by counsel that a role enhancement could not be applied under the law, but that he had to go to trial in order to challenge the enhancement. He further asserts that counsel failed to advise him that he risked losing credit for acceptance of responsibility if he did not plead guilty prior to trial.

We issued an opinion on the COA on March 22, 2018, in which we remanded for "further proceedings on the ineffective-assistance claim on which the COA was granted." *White*, 715 F. App'x at 438. This court thus expressly granted the COA on White's argument that ineffective assistance led to his rejection of the Government's plea offer and not whether counsel was ineffective for failing to advise of the possibility for an open plea.

The "mandate rule" affects the district court's review. *See United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). "Absent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.* "A mandate controls on all matters within its scope, but a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 826 (5th Cir. 1986). It "bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *Lee*, 358 F.3d at 321.

Our concern is the impact of the mandate rule on White's open-plea claim. It is clear that the open-plea issue was not presented to this court in the first appeal. White's only argument in his request for the COA was that his trial counsel was ineffective in providing accurate information on the *plea offer* from the Government. The open-plea issue was neither expressly nor

impliedly disposed of during the previous appeal. On remand, White's newly appointed counsel injected the issue into the case, first mentioning it at the evidentiary hearing when counsel asked White whether Linder advised him of an open-plea option and whether he would have entered such a plea had he been told it was an option.

The open-plea issue was not considered by this court in the initial appeal, and we have urged caution before allowing an issue that was not raised in the district court prior to the first appeal to be litigated on remand. *Id.* at 320–21. "Remand is [generally] not the time to bring new issues that could have been raised initially." *ODonnell v. Goodhart*, 900 F.3d 220, 225 (5th Cir. 2018). White argues that even if the mandate rule generally prevents litigation of a waived issue, he could amend his Section 2255 motion to include the open-plea issue on remand. The liberality under the Federal Rules of Civil Procedure for parties to amend pleadings applies to *habeas* petitions. *See United States v. Saenz,* 282 F.3d 354, 355–56 (5th Cir. 2002). Further, the district court allowed White to supplement the record regarding the open-plea issue after the hearing. Therefore, we do not hold that there was any error for the district court to allow the open-plea claim to be considered. Whether we can consider it now, though, depends on whether the current COA includes it.

We summarize the consideration of the open-plea issue in district court. The magistrate judge allowed testimony about an open plea at the hearing then also allowed supplemental briefing on the issue. The magistrate judge's later report and recommendation, however, discussed the open-plea testimony broadly and analyzed only the ineffective-assistance claims related to White's rejection of the plea agreement that we discussed earlier. White filed objections, emphasizing his open-plea argument. The district court adopted the magistrate judge's report and concluded, without elaboration, that White's objections were unmeritorious.

No. 19-40229

The district court granted a COA "with respect to the claim that counsel's deficient performance caused Movant to *reject* the Government's pre-trial offer." The only two issues wrapped up in White's rejection argument are the same two issues upon which we have granted a COA for the first appeal. White's argument about an open plea is distinct from his arguments about counsel's ineffectiveness regarding the plea deal. Accordingly, even if the district court properly heard the open-plea issue without violating the mandate rule, the open-plea issue was not the basis for the district court's COA, and White has not sought an amendment of the COA to include that issue.[2] The new COA could be narrower, but in light of the district court's similar language, we will apply the language of our 2017 COA order but without the issue of an evidentiary hearing being again before us.

White also argues that the COA permits his open-plea argument because he made the argument before the district court, then the court granted a COA on ineffective assistance of counsel relating to rejection of the Government's plea offer that did not detail any specific parts of that argument. White cites one of our opinions which held that because a district court granted a COA that used "broad, general language" instead of a specific list of issues for which the ineffective-assistance claim was granted, the COA "effectively permit[ted]" all claims of ineffective assistance. *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000). The "broad, general language" was not quoted in *Jones* for us to compare to that used here. Regardless, the language used in either the previous COA from this court or the COA below is not broad enough to

---

[2] On Petition for Rehearing, White argues that his initial *pro se* brief for this appeal could have been construed as a motion to amend the COA. Though this is true, we subsequently appointed counsel for White on this exact issue — whether the open-plea issue fell within the COA's reach — and this argument was not raised nor an amendment to the COA sought.

11

encompass the open-plea issue, as both were limited to consideration of White's ineffective-assistance claim related to the Government's plea bargain.

The 2017 COA from this court allowed consideration on remand of alleged ineffective assistance that caused White to be told "that he had to go to trial in order to challenge" an enhancement for his role in the offense, and that counsel failed to advise White "that he risked losing credit for acceptance of responsibility if he did not plead guilty prior to trial." Both of those ineffective-assistance claims insist that better advice would have caused him to accept the offered plea bargain.

Of course, plea bargaining is a process in which counsel for a criminal defendant negotiates with the prosecution in pursuit of a mutually agreeable bargain. A criminal defendant is entitled to effective counsel during those negotiations. *See Missouri v. Frye*, 566 U.S. 134, 144 (2012). White's claim is based on a factual predicate that he needed to be informed of the benefits of rejecting a bargain, while the COA is for deficiencies of counsel that failed to inform him of harms from rejecting a bargain.

White argues that the open-plea claim sufficiently relates to the claims that are clearly within the scope of the COA, and he relies on two of this court's opinions. One concerned a COA that had been granted "on the issues [of] whether trial counsel failed to advise [the defendant] about his appellate rights and whether counsel failed to file a notice of appeal as requested by" the defendant. *United States v. Camargo*, 119 F. App'x 670, 671 (5th Cir. 2005). The government had argued that the COA did not reach the issue of counsel's possible failure to consult the defendant about whether the defendant wished to appeal. *Id.* The court held that the differences among the issues were mere "nuance"; all were "sufficiently interrelated" to consider. *Id. Camargo* is an unpublished opinion and therefore is nonprecedential. In any event, that decision is consistent with our result here as the difference between bad advice

causing a rejection of a plea bargain and bad advice failing to explain the existence of an option to reject the bargain is not nuanced.

White also relies on a decision in which a COA was granted on the claim that the defendant's counsel on direct appeal should have presented certain issues about discrimination in jury selection. *Higgins v. Cain*, 720 F.3d 255, 260 (5th Cir. 2013). Then, once in this court, a new claim was raised that counsel was ineffective because of a failure to obtain a transcript of the jury *voir dire*. *Id.* at 261. We held that even if the issues identified in the COA did not mention a transcript, acquiring one would be irrelevant without the jury-selection issues identified in the COA. *Id.* at 261 n.14. The transcript issue was not so much new as it was a means to resolve what was already presented.

Based on these two cases, White contends the open-plea argument is sufficiently related because an "open plea is of a piece with advising that the only way to challenge the enhancement was by standing trial," and similarly, that Linder's failing to advise White of "his right to plead open is of 'no moment' absent [Linder's] advising" White that the only way to challenge the role enhancement is to stand trial.

We conclude that the COA is explicitly limited to ineffectiveness that led to rejection of the offered plea bargain. The argument about advice concerning an open plea is not sufficiently related. Nonetheless, we briefly analyze whether, even if the COA would permit the argument, White has shown prejudice by not being informed about open pleas.

*B.    Prejudice*

If this issue were within the scope of the COA, White would have to show that Linder's failure to provide advice about open pleas was constitutionally deficient and that White was prejudiced. *Strickland*, 466 U.S. at 687–88. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. We will examine only the issue of prejudice.

Prejudice in this context includes showing that but for Linder's failure to advise, there is a reasonable probability that White would have entered an open guilty plea before trial. *See Cooper*, 566 U.S. at 164. According to White, his testimony shows that "he would have pleaded guilty without an agreement before trial if he had known of that option." White also discusses a letter that he wrote before trial to the prosecutor that White now says indicated he "was willing to plead guilty if he could do so without stipulating to the sentencing enhancements the Government sought." The letter actually states he was willing to plead to one count if the prosecutor would be "willing to drop the leadership role and the gun enhancement." That is not showing interest in an open plea; it is pursuing a bargain.

There is additional evidence shedding light on the possibility White would have made an open plea had he only known of it. Linder testified that White "was adamant about wanting to go to trial," and that White told him, "I'm not going to plead, I want to go to trial, [Russell's] not going to testify against me." Russell testified that one month before trial, White wrote a letter telling her not to testify against him, but urging that if she did, to lie and testify that White ingested the pseudoephedrine pills instead of using them to manufacture methamphetamine, which he thought would undermine both charges brought against him. There was ample evidence that White was unconcerned about Russell as a witness and thought he could win at trial.

White cannot show a reasonable probability that he would have entered an open guilty plea before trial. Thus, any ineffectiveness of counsel in failing to explain open pleas could not have prejudiced him. White's petition for rehearing is DENIED. The district court's decision remains AFFIRMED.